## In re CALDWELL.

No. 24930.

District Court, N. D. Georgia, Atlanta Division.

June 20, 1940.

Judgment Affirmed Oct. 29, 1940.

George W. McCollum, of Atlanta, Ga., for bankrupt.

Houston White, of Atlanta, Ga., for respondent Davison-Paxon Co., Inc.

## Statement of Case.

UNDERWOOD, District Judge.

Bankrupt, by supplemental and ancillary bill in equity, prays for an injunction against Davison-Paxon Company, Inc., hereinafter called "Respondent", enjoining it from prosecuting a judgment against her, obtained in the Municipal Court of Atlanta, DeKalb Division, and also from prosecuting garnishment issued upon said judgment. A further equitable ground is that oppressive measures are being used by Respondent against bankrupt to collect a debt which has been discharged and to endanger her position by garnishment proceedings.

## Findings of Fact.

Bankrupt filed her petition in bankruptcy on March 6, 1939, and was, on the same day, duly adjudicated a bankrupt. The first meeting of creditors was held and bankrupt examined on March 20, 1939, at which time Respondent, through its attorney, appeared and examined the bankrupt, but filed no claim in the Bankruptcy Court. Subsequently, all provable debts were discharged by order granted on May 9, 1939.

Shortly prior to bankruptcy, Respondent sued bankrupt in the Municipal Court of Atlanta, DeKalb Division, on an open account, which extended over a period from February, 1936, to December, 1938, inclusive. An itemized statement, showing the

entire account, was attached to the petition as Exhibit "A".

On March 4, 1939, bankrupt filed in said proceeding in the Municipal Court a plea to the jurisdiction based upon the allegation that she was a resident of Fulton County, over which the Municipal Court of Atlanta, DeKalb Section, did not have jurisdiction, but over which the Fulton Section of the Municipal Court did have jurisdiction.

Thereafter, on March 6, 1939, the petition in bankruptcy was filed; and, on March 29, 1939, a plea of bankruptcy was duly filed in the Municipal Court and stay asked.

Thereafter, Respondent suddenly discovered that Bankrupt "purchased the merchandise listed on the itemized statement" when she was "insolvent and had no present intention to pay for same and concealed her insolvency and intention to pay for same," in spite of the fact that the account had been running under the eyes of an expert credit man for a period of two years and eleven months without this fact having been discovered or, apparently, even suspected until the filing of the bankruptcy proceedings. Then Respondent promptly amended its suit changing its character from an action ex contractu to one ex delicto in the hope that this newly discovered alleged fraud would prevent a discharge in bankruptcy.

In the face of the plea to the jurisdiction and the plea of bankruptcy, the Municipal Court entered upon the trial of the case on April 3, 1939, on which day the Court, over bankrupt's objection, held that: "The plea to the jurisdiction in the above case having been waived by defendant's filing of a plea of stay in bankruptcy, it is ordered and adjudged that same be and is hereby overruled."

After overruling, without hearing evidence, the plea to the jurisdiction, on the sole ground of waiver, the Court disregarded the plea of bankruptcy and prayer for stay and proceeded to try the case, although bankrupt's counsel announced that he was not going to take part in any further proceeding on the ground that the Court did not have jurisdiction. Apparently bankrupt filed no answer but relied on her plea to the jurisdiction and of bankruptcy.

In this situation, the Court proceeded to hear plaintiff's evidence and thereafter entered the following judgment:

"The within case coming on before me for trial after the petition was amended and facts introduced to support the amendment with reference to all allegations therein and the petition, it is considered, ordered and adjudged that the plaintiff recover of the defendant in the sum of $320.88 and all costs of this action.

"This 3rd day of April, 1939."

No motion for new trial was filed nor appeal taken. Thereafter, plaintiff had, garnishment issue and served on defendant's employer.

Thereupon, bankrupt filed this ancillary proceeding asking for relief from the alleged oppressive acts of Respondent.

A tabulation made from the itemized statement of bankrupt's account with Respondent, which was attached to the petition in the Municipal Court, showing its status month by month during the whole period, is as follows:

| Month | 1936 | | | 1937 | | | 1938 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Charges | Credits and Returns | Cash | Charges | Credits and Returns | Cash | Charges | Credits and Returns | Cash |
| Jan. | $ None | $ None | $ None | $ 26.27 | $ 7.59 | $ 20.00 | $ 9.87 | $ None | $ 50.00 |
| Feb. | 21.93 | 2.00 | None | 12.50 | None | 20.00 | 66.38 | 21.85 | 75.00 |
| Mar. | 29.85 | None | 18.00 | 26.95 | 3.67 | 15.00 | 27.22 | 1.00 | 30.00 |
| Apr. | 7.63 | None | 20.00 | 24.94 | None | 40.00 | 39.92 | 1.99 | None |
| May | 42.60 | None | 10.00 | 31.22 | None | 10.00 | 46.45 | 2.66 | 25.00 |
| June | 25.40 | 3.98 | 10.00 | 53.73 | 16.19 | 12.00 | 43.54 | 1.49 | 10.00 |
| July | 1.00 | None | 15.00 | 10.48 | None | 25.00 | 12.88 | None | None |
| Aug. | 2.24 | None | 20.00 | 71.07 | 12.77 | 25.00 | 30.98 | 3.96 | 10.00 |
| Sept. | 31.21 | None | 15.00 | 44.43 | None | 20.00 | 33.90 | None | None |
| Oct. | 30.75 | 5.00 | 20.00 | 32.69 | 2.10 | 25.00 | 42.68 | .98 | 10.00 |
| Nov. | 54.41 | 16.89 | 10.00 | 61.98 | 5.98 | 30.00 | 14.65 | None | None |
| Dec. | 72.34 | 4.95 | 30.00 | 53.47 | 8.89 | 10.00 | 64.93 | 3.97 | None |
| Total | $319.36 | $32.82 | $168.00 | $449.73 | $57.19 | $252.00 | $433.40 | $37.90 | $210.00 |

Nothing unusual appears from this account, which shows the amount of purchases and the credits thereon arising out of return of merchandise and cash payments. It certainly does not disclose the existence of false representations or the use of false pretenses, but on the other hand, shows a pretty even distribution of charges, credits and payments throughout the period, although the unpaid balance of each month added to that of the preceding month gradually increased the indebtedness until it reached the amount sued for. The account indicates an unwise extension of credit rather than fraud on the part of the purchaser. The statement, from which the above tabulation was made, showed innumerable items purchased over a period of three years, and it is inconceivable that she obtained all of them by false pretenses or false representations, and thereby deceived Respondent to its injury.

### Conclusions of Law.

The debt in question was undoubtedly dischargeable and was discharged in the bankruptcy proceedings, unless it came within the exception set out in Section 17, sub. a(2), of the Bankruptcy Act, 11 U.S.C.A. § 35, sub. a(2), which provides: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations."

Respondent contends that the judgment in the Municipal Court is conclusively binding upon this Court and that the effect of such judgment is to make the debt in question a nondischargeable debt which can be pursued, regardless of the plea of bankruptcy, just as if bankruptcy had not intervened.

If a judgment had been entered on the petition as originally filed without amendment, there could be no question that the judgment procured was a debt dischargeable in bankruptcy.

The amendment undertook to change the nature of the suit from one ex contractu to one ex delicto in order to evade the bankruptcy law.

While this was the intent and purpose of the amendment and subsequent proceedings, they failed to attain this result, since the petition, even as amended, did not adequately allege that the goods were procured by bankrupt "by false pretenses" or "false representations."

The allegations of the amendment, which Respondent relies upon to bring the debt within the exception, are that:

"* * * at the time this defendant purchased the merchandise listed on the itemized statement marked 'Exhibit A' and attached to the petition, defendant was insolvent and had no present intention to pay for same, and concealed her insolvency and intention to pay for same, and concealed her insolvency and intentions with respect to said purchases from your petitioner.

"(3) That the action of the defendant in purchasing said merchandise without a present intention to pay for same, and knowing her promise to pay for same was false, was deceitful and fraudulent."

■ These are merely very general and reckless conclusions of the pleader, unsupported by any statement of facts and contradicted by the regularity of the account as shown by Respondent's own statement attached to its petition as "Exhibit A". It is difficult to see how "false pretenses" or "false representations" can be spelt out of these allegations of the petition.

The following language of the Circuit Court of Appeals is particularly applicable to this case:

"There is therefore an absence of averment of a false representation made to plaintiff by defendant, by which plaintiff was deceived to his injury, which is essential to an action of deceit. * * *

"It is important to determine not only whether the replication sufficiently charges fraud, but fraud 'by obtaining property by false pretenses or false representations,' which is the only kind of fraud that prevents the release of bankrupt from his provable debts." Zimmern v. Blount, 5 Cir., 238 F. 740, 744.

■ It is well settled that: "In view of the well-known purposes of the bankrupt law, exceptions to the operation of a discharge thereunder should be confined to those plainly expressed." Gleason v. Thaw, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717.

■ For the debt due Respondent to come within the above quoted exception in Section 17, sub. a(2), of the Act, it must have been created "by false pretenses or false representations," and where a judgment in a case of this kind is claimed to be a nondischargeable debt, it must be based on a petition which clearly and specifically

alleges facts which show the debt was created by false pretenses or false representations. If this is not done, or if the allegations of the petition are vague, ambiguous or indefinite, or mere conclusions of the pleader, then the judgment rendered on such petition will be construed to be an ordinary judgment dischargeable in bankruptcy.

Respondent's contention that the allegation and proof of mere fraud, that is, a simple action of deceit, are all that is required to bring a case within the exception, is sufficiently answered by the above quoted language of the Circuit Court of Appeals for this Circuit. Such contention may have been good before the Amendment of 1903, which struck out the words, "judgments in actions for frauds," but is not under the present Act.

An examination of the cases cited by Respondent in support of its contentions discloses that some were decided prior to the amendment of February 5, 1903, which struck out of Section 17, sub. a(2), of the Bankruptcy Act the words, "judgments in actions for frauds," and are, therefore, not apposite under the present law which omits these words.

Other decisions cited by Respondent are based, not on Section 17, sub. a(2), but on Section 17, sub. a(4), which is in the following words, "(4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity." The latter exception, of course, is not applicable at all in this case.

Still other cases cited by Respondent, when examined in the light of their facts, show that the petition actually alleged specific false representations made by the Bankrupt; for example, representations made by false written statements furnished to secure credit.

The record in this case shows that the judgment against Bankrupt in the State Court was not for a debt based upon a liability for obtaining money or property by false pretenses or false representations, but was, at most, a judgment in an action of deceit, and is, therefore, a debt which was discharged in the bankruptcy proceedings. The garnishment proceedings based thereon must also fall, since they can have no effect after the discharge of the judgment. In this situation, Bankrupt is entitled to relief, and this Court has jurisdiction to grant same. Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195; In re Cleapor, D.C., 16 F.Supp. 481; In re Nichols, D.C., 22 F. Supp. 694.

It might seem that undue importance is given to this case, but this is not true. In this District, the practice is too common, for creditors, with dischargeable debts, to disregard the judgments of this Court discharging bankrupts and to file proceedings in the State Courts, hoping, and too often obtaining, judgments on various pretexts, thereby coercing bankrupts into paying out of their future earnings debts which in law have been discharged, or imposing upon them expensive and burdensome litigation. It is of great importance, therefore, that this Court should do everything it can to stop such practice in defiance of its orders, and to afford debtors, usually the most helpless and needy, the relief to which they are entitled under the Bankruptcy Law and orders of discharge.

These discharged bankrupts are in many cases induced to renew such debts or pay them off rather than risk the danger of losing their employment, or of undergoing the expense, which they can not afford, of defending numerous cases in the State Courts. Furthermore, every such case that is successfully maintained in the State Courts induces others to try the same method, thus impairing or destroying the efficacy of the judgments of discharge of this Court.

In this manner bankrupts are made to pay out of their earnings since adjudication debts which have really been discharged in their bankruptcy proceedings, thus losing "the new opportunity in life and the clear field for future effort, which it is the purpose of the Bankruptcy Act to afford the emancipated debtor." Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 699, 78 L.Ed. 1230, 93 A.L.R. 195. It is the purpose of the Bankruptcy Act "to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." Williams v. United States Fidelity & Guaranty Co., 236 U.S. 549, 554, 35 S.Ct. 289, 290, 59 L.Ed. 713.

If creditors, with their expert credit men, were as diligent in investigating the responsibility of applicants for credit and as prudent in bestowing it, as they are persistent and sometimes oppressive in attempting to collect after the indebtedness

636

has been incurred, there would be fewer claims of fraud and attempts like this to defeat a discharge in bankruptcy.

It is clear that this Court has authority to entertain the present proceeding and to determine the effect of the order of adjudication, and to enjoin Respondent from its threatened interference therewith, although this Court is not bound to exercise this authority. Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195. Whether or not the Bankruptcy Court will exercise such authority is a matter to be determined from the facts in each particular case, as every case must stand upon its own facts. I find, however, that this case is one in which this Court should exercise its authority.

Whereupon, it is considered, ordered, adjudged and decreed that Respondent be, and hereby is, permanently enjoined: (1) From further prosecuting said suit in the State Court; (2) from undertaking to enforce said judgment therein obtained; (3) from continuing its garnishment proceedings in an effort to collect said judgment; (4) from in any way attempting to collect said claim or to prevent the payment by garnishee of salary due the bankrupt; and (5) from, in any way, annoying bankrupt with respect to said debt, judgment or garnishment.