**In the Matter of William M. DYE.**

**No. 24685.**

United States District Court,
W. D. Louisiana,
Shreveport Division.

Sept. 3, 1971.

Maynard E. Cush, Shreveport, La., for petitioner.

John D. Goodwin, Shreveport, La., for bankrupt.

EDWIN F. HUNTER, Jr., District Judge:

This is a petition to review an order of the Referee in Bankruptcy, denying objections to a discharge in bankruptcy in which William M. Dye filed his petition on February 8, 1971, and was discharged on April 5, 1971 pursuant to order of the Referee in Bankruptcy.

There is much ado in the record concerning the questions of: (1) whether the finance company relied on the statement of the bankrupt, and (2) whether the statement of the bankrupt was given with fraudulent intent.

The Referee, after a thorough canvas and analogy of the facts, concluded that the lender did not rely on the statement of the bankrupt and that the bankrupt did not intend to defraud the lender by use of the statement.

It is axiomatic that issues of credibility are for the triers of the facts. The findings made by the Referee are entitled to great weight. General Orders in Bankruptcy, Nos. 36 and 47; In re United Wholesalers, Inc., 7 Cir., 1960, 274 F. 2d 316, 319; In re Pringle Engineering & Mfg. Co., 7 Cir., 1947, 164 F.2d 299, 301. This Court accepts the Findings of Fact and Conclusions of Law made by the Referee, a copy of which is attached and made a part hereof.

The decision of the Referee is affirmed in all particulars.

## OPINION OF THE REFEREE ON DISCHARGEABILITY OF DEBT OWED TO ALL-STATE CREDIT PLAN, INC.

Hearing was had on this objection to the dischargeability of this debt on May 11, 1971.

This indebtedness arose in the following manner:

The Bankrupt first came to know the creditor, All-State Credit Plan, Inc., by having All-State Credit Plan purchase a sales contract in the sum of $350.04. This contract was purchased from Holmes Pontiac for $320.00. The cost of this money for one year was about $30.00, which for consumer loans is very low, since it was only about 10% which was capitalized.

Mr. Ritter, the All-State Loan Manager was very candid and stated that this was one means of getting customers. The next step was to convert this relatively low interest loan into the regular category by offering him a bit more money and changing the interest rate.

On the day the alleged financial statement was taken, the new loan was made. He was given $212.90 cash. The finance charge was $313.92, to be paid out in twenty four months.

As Mr. Ritter says, "This is where we make our money." See pages 26 and 27 of transcript.

The new indebtedness was now $912.00.

This is the customary way for most finance companies to do business. The Court finds that there are about five finance companies in every non-business bankruptcy.

This practice of course is one of the major reasons for the ever-increasing number of bankruptcies in our jurisdiction.

Now, to get to the real issue of the case at hand.

On November 25, 1970, the bankrupt herein gave the All-State Credit Plan a financial statement which lists the following debts:

| | |
|---|---|
| Sales Finance | $ 1,000.00 |
| C.I.T. | 2,000.00 |
| Sears | 700.00 |
| Mutual Plan | 180.00 |
| Family | 100.00 |
| House | 7,000.00 |
| | $10,980.00 |

On February 12, 1971, William M. Dye filed a petition in bankruptcy in the United States District Court for the Western District of Louisiana.

All-State Credit Plan, Inc., is listed as a creditor.

On April 5, 1971, All-State Credit Plan, Inc., filed an objection to the discharge in general and as an application to determine the dischargeability of its debt.

This motion came on for hearing on May 11, 1971.

All-State asserts that the bankrupt obtained money and an extension of credit "upon a materially false statement in writing respecting his financial condition." (Section 17a(2) Bankruptcy Act)

The determination of dischargeability by this Court is required by the amendment to the Bankruptcy Act, October 19, 1970, P.L. 91–467, Sec. 6, effective December 18, 1970, which in pertinent part enacts:

"A creditor who contends that his debt is not discharged under clause (2), (4), or (8) of subdivision (a) of this section must file an application for a determination of dischargeability within the time fixed by the court pursuant to paragraph (1) of subdivision (b) of section (32) of this title and, unless an application is timely filed, the debt shall be discharged." Sec. 17c(2).

Clause 2 of Sec. 17a enacts:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (2) are liabilities for * * * obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his finan-

cial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive * * *."

In order to have the debt allegedly due All-State Credit Plan, Inc. declared non-dischargeable the applicant must prove the following elements and must prove those elements in accordance with the rules of evidence generally applicable in and to a civil action.

The elements are:

1. It must be shown and proven that the false statements or representation were made in writing.

2. It must be shown and proven that the bankrupt made the false statements and representations to the applicant.

3. It must be shown and proven that the bankrupt knowingly and willfully made the false statements and representations to the applicant with the intent of defrauding the applicant.

4. It must be shown and proven that the applicant relied upon and was misled by the false statements or representations in making the loan.

5. Money or property must be obtained by reason of the false statements or representations before it can constitute ground for non-dischargeability of the debt.

> 11 U.S.C.A. § 35(a) (2),
> Bankruptcy Act § 17, sub. § a(2);
> Consolidated Credit Corporation of Baton Rouge, Inc. v. Matherne, 217 So.2d 426, La.App.1968.

The Court hereby makes the following findings of fact:

1. That the Bankrupt gave a false financial statement.

2. That he obtained money and an extension of credit.

3. That the lender knew the statement was false.

4. That the lender did not rely on the statement.

5. That the borrower did not intend to defraud the lender by use of this statement.

As pointed out above, the finance company failed to sustain the burden of showing that it depended on this financial statement in making the loan.

The loan manager and his subordinates must necessarily have known that this so-called financial statement was false.

First, it is couched in round numbers so anyone knows that at best it could only be a "guess" or an "attempt at recollection".

It is the opinion of this Court that the lender has a duty to do everything possible to obtain an absolutely correct financial statement that it can depend on if it desires to use said statement later as a basis for denial of discharge.

Furthermore, this loan man had before him information from the lenders exchange that showed the borrower owed Sales Financing $1,700.00 rather than $1,000.00, as set out on the alleged financial statement.

Futher, that the borrower owed C.I.T. $2,700.00 rather than $2,000.00 set out in the alleged financial statement.

Of course, there are other discrepancies to show that the lender knew that this statement was false.

Further, it is inconceivable that sophisticated small loan company management is unaware of the proliferation of credit cards by banks, oil companies, department stores, etc. If they expect all borrowers to list these obligations on so-called "financial statements," the "fast transactions" are a thing of the past. There is no earthly person who can read —let along understand in a thirty minute period—the various documents with all the fine print required by these companies when loans or renewals are negotiated. As do the majority of the persons who obtain loans from such companies, the Dyes signed everything placed in front of them, including a document with all spaces blank. Borrowers know these companies have Governmental sanc-

898

tion and presumably are under Governmental regulation, and they cannot conceive that their Government—State or Federal—would permit anything other than honest and fair dealing.*

The standard of conduct of these companies must equal or exceed that of reputable business organizations. They must recognize that in most instances they are dealing with and lending to those in the lower income brackets with limited educations. If they expect to brand these borrowers with quasi-criminal acts when they charge them with obtaining money or an extension of credit on false financial statements with *intent* to deceive— they must deal with them on an honorable and equal basis—they must take the necessary time to explain to them the contents of the multiple documents they are asked to sign. They must not with impunity be permitted to violate the very statutes which authorize their operation by obtaining documents signed in blank or with blank spaces.*

This Court rejects as utterly fantastic All-State's contention that, under all the circumstances concerning the loan in question, the Dyes are guilty of any *intent* to deceive. They obtained some $200.00, and in effect increased their indebtedness to All-State by over $500.00, mainly because of the large finance charge.*

It is time to brand these so-called "financial statements" taken under the circumstances set forth herein by their proper name—pieces of paper prepared at the direction of loan company officials for the sole purpose of charging borrowers with issuance of false statements and

intent to deceive in the event petitions in bankruptcy are later filed. It is not a "financial statement" as such. It contains no listing of assets. It is not a balance sheet from which net worth can be obtained. There are no supporting statements or other financial data. It does not contain sufficient information upon which a bank or loan company would rely in determining whether a loan should be made.*

It is on the basis of this record that All-State asks this Court to find that the bankrupt obtained property and the renewal of credit on a *wilfully* executed false financial statement with *intent to deceive*. The Court refuses to do so. Realities cannot and will not be brushed aside easily. There must be a bargaining position of equals which certainly did not exist in this case. "Intent" is the design, resolve, or determination with which a person acts. "Deceit" is a fraudulent and cheating misrepresentation, artifice, or device used by one to deceive and trick another, who is ignorant of the true facts. All-State was not deceived. It was not lulled into any false sense of security. It was not ignorant of materially true facts when the loan was made.*

ORDER

At Shreveport, Louisiana, in the said district, this 9th day of July, 1971.

In accordance with the foregoing findings of fact and conclusions of law, it is

Ordered that the application of All-State Credit Plan, Inc. filed April 5, 1971, that the discharge in general and that in particular that any debt owing to it be held not discharged in this proceeding is denied.

---

* Many of these views have been expressed in an opinion by the Honorable Clive W. Bare, Referee, in the case of Kenneth Ray Hill, No. 28,738. In fact the paragraphs marked with an * have been lifted out of said opinion.