In re Thomas Allen SMITH, a/k/a
Thomas A. Smith, Bankrupt.

NATIONWIDE FINANCIAL CORPORA-
TION of Colorado, a Colorado
Corporation, Plaintiff,

v.

Thomas Allen SMITH, Defendant.

Bankruptcy No. 79–958–N.

United States Bankruptcy Court,
E. D. Virginia.

Jan. 22, 1980.

Stanley A. Phillips, Virginia Beach, Va., for bankrupt.

John D. Hooker, Jr., Virginia Beach, Va., for plaintiff.

HAL J. BONNEY, Jr., Bankruptcy Judge.

On August 7, 1979, Thomas Allen Smith filed a voluntary petition in bankruptcy.

On September 25th, Nationwide Financial Corporation of Colorado filed a complaint alleging that Smith's debt to it is nondischargeable since it was obtained on the basis of a materially false financial statement in writing upon which the plaintiff relied, thus falling under the exception to discharge enunciated by § 17(a)(2) of the Bankruptcy Act, 11 U.S.C. § 35(a)(2).

Nationwide Financial Corporation is a Colorado based institution specializing in lending money to individuals colloquially referred to as "executive types." In order to reach its clientele, Nationwide advertises in various specialty and financial publications such as The Wall Street Journal.

Smith is an erstwhile automobile rental agency owner and used car proprietor. His businesses failed to generate sufficient cash flow, hence his appearance before this Court.

Testimony adduced at trial indicates that Smith forwarded an application for an immediate loan of $15,000 to Nationwide on November 23, 1977. The application purported to be a financial statement reflecting the applicant's condition as of the date of endorsement. [plaintiff's exhibit # 2] The form contained the standard boilerplate clause: "I hereby certify that all statements made herein are true and complete, and are to be relied upon by you and are made to induce you to make a loan. . . ."

On the surface the application discloses that Smith had a net worth in excess of $900,000. Subsequent events belie the accuracy of that figure. A more detailed analysis of that statement is in order.

On the asset side, Smith indicated that he owned two parcels of real property located at 5333 Reasor Court, Virginia Beach, Virginia, and at 891 East Little Creek Road, Norfolk, Virginia, worth $175,000 and $425,000, respectively. The same property was valued in the B–1 bankruptcy schedules at $150,000 and $250,000. Smith testified that he paid $350,000 for the East Little Creek Road Property in 1975.

Smith assigned values of $450,000 to his rent-a-car business and $200,000 to his car repair and sales firm for reasons which are somewhat less than clear. He listed several other assets worth $43,500 in the aggregate bringing his total assets to $1,294,500.

The form indicates that Smith had an annual income in excess of $125,000 comprised of the following components: (1) salary as president of Thrifty Rent-A-Car, $70,000; (2) rental income, $48,000 and (3) pension, United States Navy, $7,500.

Liabilities of $385,000 were listed as follows; (1) William Pearlman, $215,000; (2) Life Federal Savings and Loan, $10,000; (3) Tunstall, Inc., $60,000; and (4) Naval Air Federal Credit Union, $40,000.

At the time Smith prepared the application, he was secondarily liable, as personal guarantor, on a significant number of obligations. He was personal guarantor on notes to Ford Motor Credit Corporation in excess of $1,000,000; to Roy B. Martin, James Allen and Frank L. Ritter, each in the amount of $28,000; to the Bank of Virginia for $6,500; and to Hilltop Volkswagen for $2,000.

The financial statement is conspicuously silent with regard to these debts. At trial Smith indicated that he thought the statement requested information solely with regards to primary, not contingent, liabilities.

Upon receipt of the application by Nationwide, Smith was required to supply a copy of his 1976 Federal income tax return. Nationwide also ran a credit check on the applicant.

The credit check indicated that Smith had failed to list five creditors to whom he owed somewhat less than $10,000. Nationwide was not able to detect any significant difference between Smith's stated income and that reflected on his Federal tax return.

On the basis of this, Nationwide calculated that Smith had a monthly income $3,000 in excess of his monthly expenses. It authorized a $15,000 loan, at 18% interest, which was the maximum that the company would advance without requiring security.

■ The exceptions to discharge provided in § 17(a)(2) of the Bankruptcy Act have given rise to voluminous reported litigation. There are four criteria, all of which a plaintiff must establish to render the debt non-dischargeable in bankruptcy: (1) a materially false financial statement in writing, (2) knowledge of its falsity or acting in reckless disregard, (3) made with the actual intent to deceive, and (4) reliance upon the statement by the creditor to his prejudice. *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540 (W.D.Va.1967); *In re Smith*, 424 F.Supp. 858 (M.D.La.1976); *United States v. Syros*, 254 F.Supp. 195 (E.D.Mo.1966); *Public Finance Corporation of Redlands v. Taylor*, 514 F.2d 1370 (9th Cir. 1975), citing *Sweet, supra.*

In addition to the plaintiff having to prove *all* four of the elements, that proof must be by evidence which is clear and convincing and not merely by a preponderance. *Brown v. Buchanan*, 419 F.Supp. 199 (E.D.Va.1975).

The task of a plaintiff is obviously formidable. But as formidable as this may appear—and is—it is the clear intent of dischargeability legislation. *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1914). ·Remember Harry Thaw and the "Girl in the Red Velvet Swing?" Poor Harry, a bankrupt, but immortalized in case law. This cardinal principle of bankruptcy has been echoed most clearly in this circuit with holdings that the discharge provisions of the Bankruptcy Act shall be construed liberally in favor of the bankrupt, *Roberts v. Ford*, 169 F.2d 151 (4th Cir. 1948), and against the objector. *Royal Indemnity Co. v. Cooper*, 26 F.2d 585 (4th Cir. 1928).

The principle was rather well enunciated in a case thusly:

"A remedial statute, like that of bankruptcy intended for the relief of debtors, must, insofar as denial of discharges and therefore of relief, be construed strictly so that all debts except those coming exactly within the exception will stand discharged." *Davison-Paxson Co. v. Caldwell*, 115 F.2d 189 (5th Cir. 1941), cert. denied 313 U.S. 564, 61 S.Ct. 841, 85 L.Ed. 1523.

The Supreme Court has spoken rather adequately on the subject in a number of decisions which one may tend to overlook when discovering so many circuit court and district court decisions to cite. The clear doctrine of the Supreme Court in addressing the discharge of the debtors is to give them "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970); *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695 (1934); *Lewis v. Roberts*, 267 U.S. 467, 45 S.Ct. 357, 69 L.Ed. 739 (1925); *Williams v. United States Fidelity & Guaranty Co.*, 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915).

■ (1) It is clear and convincing that the bankrupt here, Smith, tendered to Nationwide a materially false financial statement in writing. That he was worth in excess of $900,000 is just not so. Nor is he some naive consumer who just walked into a loan office; he was an experienced businessman operating a large operation. He knew he was personally liable on some rather large debts and yet failed to disclose this fact.

The Court is of the opinion, too, that he overstated his assets.

(2) Smith knew of his personal endorsements and, therefore, certainly had knowledge the statement was false. Such a financial statement is, in effect, a balance sheet and a businessman familiar with balance sheets knows that all nature of debts are disclosed on them.

■ (3) Was actual fraud and deceit employed by Smith in tendering the statement? The bankrupt's actions in certain respects are highly suspicious. Why did he go out of town to obtain a loan? Why did he seek a mail loan? Why can't someone with a purported net worth in excess of $900,000 walk into the nearest bank? Why pay 18% interest to Nationwide if he was, in truth, wealthy? Why send directly to the

Court after the trial on the issue of dischargeability and while the Court has the matter under advisement "additional evidence" in an attempt to sway the Court without the opportunity of the adverse party to respond? This is not the action of a naive man who doesn't know better. The Court has never had this occur before; not the most ignorant bankrupt has attempted this.

The Court finds an affirmative intent on the part of the bankrupt to deceive the lender.

(4) Did Nationwide reasonably rely upon the financial statement mailed to it?

▉▉ Since all of the elements must be sustained, *Sweet,* supra, a bankrupt may give a materially false financial statement in writing, know it is false and intent out-and-out to deceive, yet if the creditor did not rely upon the statement, the debt is still discharged. A creditor may seek to rely on the statement after bankruptcy ensues, but in light of a careless disregard for obvious "red flags" of warning did not, in truth, act reasonably and seeks to impale the borrower on the statement by the dischargeability action.

Sound, clear cases condemn this practice. In *In re Braunbeck,* 346–71–NN, District Judge Kellam adopted *Sweet,* particularly on the matter of notice of the falsity. District Judge MacKenzie has emphasized the slight explanation given borrowers when making the loan as to the purpose of the statement. *In re Goers,* 542–72–N.

"If creditors, with their expert credit men, were as diligent in investigating the responsibility of applicants for credit and as prudent in bestowing it as they are persistent and sometimes oppressive in attempting to collect after the indebtedness has been incurred, there would be fewer claims of fraud and attempts like this to defeat a discharge in bankruptcy". *In re Caldwell,* 33 F.Supp. 631 (N.D.Ga. 1940), cert. denied 313 U.S. 564, 61 S.Ct. 841, 85 L.Ed. 1523.

See *In re Dye,* 330 F.Supp. 895 (M.D.La. 1971); and *Cash Finance Service, Inc. v.*

*Haisch,* 173 So.2d 851 (La.App.1965), on the use of financial statements.

Factually, upon receipt of the statement in the mail, Nationwide requested Smith's pertinent tax returns and had a retail credit check made locally. This credit check revealed five creditors omitted from the financial statement. *Nationwide then knew the statement was false.* The collector from Nationwide testified that they give the borrower "the benefit of the doubt" and allow a $5,000 to $20,000 "leeway."

That is fine, but a creditor is on notice the prospective borrower may well have lied. If he failed to disclose five creditors where he was duty bound to list *all,* perhaps he has lied in other respects. The flag is up.

*Kentile Floors, Inc. v. Winham,* 440 F.2d 1128 (9th Cir. 1971), says that such things should have alerted the creditor to actual conditions. In *Kentile* it was a course of dealings reflecting such things as sporadic payments. Also see *In re Braunbeck,* supra; *In re Dye,* supra; *In re Smith,* 424 F.Supp. 858 (M.D.La.1976); *In re Dyer,* 4 BCD 80 (Md.Wis.1978); *In re Arden,* 2 BCD 204 (D.R.I.1975); *Bank of Monroe v. Gleason,* 9 F.2d 520 (8th Cir. 1925).

*In re Dyer* is very much on point and *In re Arden* even more so. There the court states the "creditor has turned its back on an obvious red flag and actually chosen to ignore it."

Knowledge of the omission of creditors, yet acceptance of the statement, has even been termed a trap. *Swint v. Robbins Federal Credit Union,* 415 F.2d 179 (5th Cir. 1969).

Interestingly, Nationwide never asked the purpose of the loan.

▉ Partial reliance is sufficient to render a debt nondischargeable, but this doctrine may not be seized upon to fill a gap caused by unreasonable reliance. Everyone needs to reread *Banks v. Siegel,* 181 F.2d 309 (4th Cir. 1950), and not simply cite it. The decision in *Banks v. Siegel* is limited to those facts. The case speaks of "sufficient reliance on the false statement" and has

particular reference to a situation where the lender has collateral for its loan and the bankrupt argues, "They really relied on their collateral and not on the statement."

This case stands for the proposition that the creditor has relied *partially* on the security interest and *partially* on the statement as well. I know of no court today which is affording a sacrosanct status to such boiler plate language, for instance, as "I have no other debts." *In re Conner,* 16–72–NN, MacKenzie, D. J.

Reliance, in part, which falls below a certain standard clearly would not prevail to prevent a discharge. The doctrine neither states nor implies that any reliance, a modicum, is sufficient.

*In re Braunbeck,* supra, is a case in point. There Judge Kellam cited *Banks v. Siegel* and *Lloyd v. Industrial Bank of Commerce,* 241 F.2d 924 (2d Cir. 1957), but held sufficient reliance was not present. And one of the reasons, as here, was that the loan company "was on notice that the financial statement was false."

In repose, we find a bankrupt who tendered a materially false financial statement in writing, with knowledge of its falsity and with an actual intent to deceive.

While such action is reprehensible, recall that all four elements must be proven; it is not three out of four as strong as that may sound.

Nationwide was dealing through the mail at considerable distance with a prospective borrower it would not see. This is an obvious handicap which should give rise to extreme caution. The borrower was seeking a sizeable sum of money for some reason it never asked. Through a retail credit check it discovered Smith had omitted five creditors and yet in the face of this error *or* lie it inquired no further—Nationwide granted the loan.

It cannot be said that Nationwide reasonably relied upon the statement.

Accordingly, the debt of Thomas Allen Smith to Nationwide Financial Corporation of Colorado is discharged in bankruptcy.

IT IS SO ORDERED.