In re Michael L. FUTTERMAN, Debtor.

VILLAGE BANK AND TRUST COMPANY OF RIDGEFIELD, Plaintiff,

v.

Michael L. FUTTERMAN, Defendant.

Bankruptcy No. 5–82–00399.
Adv. No. 5–82–0284.

United States Bankruptcy Court,
D. Connecticut.

Dec. 9, 1983.

---

David J. Demars, Cutsumpas, Collins & Hannafin, Danbury, Conn., for plaintiff.

David Grossman, Brookfield, Conn., for debtor, defendant.

## MEMORANDUM AND DECISION

ALAN H.W. SHIFF, Bankruptcy Judge.

### I

### BACKGROUND

The plaintiff (Bank) in this adversary proceeding seeks a determination that a debt (renewal loan) in the amount of $25,000.00, is nondischargeable under 11 U.S.C. § 523(a)(2)(B).[1] The debtor has denied the material allegations of the Bank's complaint and has raised a Special Defense that the renewal loan was granted on the

strength of the Bank's security interest in real property owned by the debtor's closely held corporation, Ivy Ridge Corporation. The facts necessary for a determination of the issues raised by the pleadings are found as follows:

The debtor and Ivy Ridge Corporation were regular customers of the Bank. Over a period of approximately three years, the debtor obtained approximately twelve loans from the Bank. It was the Bank's practice to request updated financial statements and in compliance therewith, the debtor submitted four such statements.[2] In the most recent of those financial statements, which was dated December 20, 1979, the debtor listed, *inter alia,* his net worth at $427,677.00, a one-third interest in Connecticut Group Associates and income of $11,500.00 from real estate.[3]

In March 1980, the debtor applied to the Bank for the renewal of a $25,000.00 loan which, as noted, is the basis for the debt involved in this proceeding. This renewal loan, like its predecessor, was in the name of Ivy Ridge Corporation and guaranteed by the debtor. The interest rate on the renewal loan, however, was increased from 11% to 19.5%. The renewal loan, like its predecessor, was to be secured by a second mortgage on property known as Lot No. 3, Kiln Hill Road, Ridgefield, Connecticut. At the time of the renewal loan application, People's Savings Bank-Bridgeport held the first mortgage.

### II

### DISCUSSION AND CONCLUSIONS

In this proceeding, the Bank attempts to link the debtor's December 20, 1979 finan-

---

1. § 523(a)(2)(B)

    (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

        (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

        (B) use of a statement in writing—

        (i) that is materially false;

        (ii) respecting the debtor's or an insider's financial condition;

        (iii) on which the creditor to whom the debtor is liable for obtaining such money,

property, services, or credit reasonably relied; and

        (iv) that the debtor caused to be made or published with intent to deceive.

2. Transcript of Direct Examination of Robert Macklin, Executive Vice President of the Bank, pp. 33–34.

3. Plaintiff's Exhibit A. It should be noted that the financial disclosure statement is dated on the top right-hand corner "12/20/79" but "12/21/1979" appears opposite the line for the debtor's signature.

cial statement to the March 19, 1980 approval of the renewal loan. The Bank thus has the burden of proving each of the four elements of Code § 523(a)(2)(B).

As pointed out by this Court in *In re Fosco, Jr.,* 14 B.R. 918, 921 (Bkrtcy.Conn. 1981),

> One of the few changes in 11 U.S.C. § 523(a)(2) from section 17(a)(2) of the old act is the addition of the word "reasonable" in subparagraph (B). H.R. No. 95–595 Cong., 1st Sess. 364 (1977). According to the legislative history, this modification reflected the trend of court decisions. Congress recognized the practice of creditors who would induce debtors into making false financial statements on which the creditors did not rely but hoped to obtain leverage against debtors with the threat of the exception to discharge. See H.R. No. 95–595, Cong., 1st Sess. 130–31 (1977). The requirement of reasonable reliance under 523(a)(2)(B) makes abusive practices of this type less likely to succeed.

■ It is therefore apparent that a creditor must not only prove reliance upon a debtor's financial statement but also that such reliance was reasonable. The court in *Matter of Patch,* 24 B.R. 563 at 566 (Bkrtcy. D.Md.1982), analyzing the element of reliance in Code § 523(a)(2)(B), identifies several situations which indicate a lack of reliance.

> The first type of situation is when the creditor knows at the outset that the information listed on the financial statement is not accurate. *See, e.g., Swint v. Robins Federal Credit Union,* 415 F.2d 179, 184 (5th Cir.1969); *In re Houk,* 17 B.R. 192, 195–96 (Bkrtcy.D.S.D.1982). A second type of situation is when the financial statement does not contain sufficient information to portray realistically the debtor's financial status. *See, e.g., In re Magnusson,* 14 B.R. 662, 668–69 & n. 1 (Bkrtcy.N.D.N.Y., 1981). Finally, when the creditor's investigation suggests that the financial statement is false or incomplete, reliance thereon is held to be unrea-

sonable. *See, e.g., In re Smith,* 2 B.R. 276, 279 (Bkrtcy.E.D.Va., 1980).

A fourth and emerging view is that under certain circumstances, the creditor's failure to verify any of the information contained in the financial statement renders reliance on that statement unreasonable.

■ Here the Bank claims that the debtor's financial statement is materially false because it did not accurately disclose the debtor's assets or liabilities. It is unnecessary, however, to determine whether the apparent errors and omissions in the debtor's financial statement were material because after analyzing the evidence and evaluating the credibility of the witnesses presented, it is concluded that any reliance by the Bank upon the debtor's December 20, 1979 financial statement in renewing the $25,000.00 loan was not reasonable.

During the trial, the Bank produced the testimony of Robert Macklin, its executive vice-president and senior lending officer. Macklin testified that in March 1980, before the subject loan was renewed, he knew that the debtor was indebted to the Bank for at least $112,000.00. He also knew, that neither the $25,000.00 loan on which the subject renewal was predicated nor the property securing it was listed nor was another loan of $24,000.00 or the property securing it disclosed. He therefore knew that the debtor's financial statement, which listed a debt to the Bank of only $63,000.00, was inaccurate.

The evidence also indicated that Macklin knew that the debtor's financial statement was deficient in that it did not disclose several real estate lots. Finally, the evidence demonstrated that Macklin knew that the debtor's checking account had been overdrawn on several occasions and that between December 1979 and March 1980 the debtor had been overdue on two loans which had to be rewritten to bring them current.

Macklin, whose loan authority did not extend to the amount of the subject loan, submitted the debtor's application to the Bank's loan committee along with his rec-

ommendation that the loan be approved. There was no credible evidence that the loan committee did anything other than agree with Macklin.

It is therefor apparent that the Bank had knowledge that the debtor's December 20, 1979 financial statement was incomplete and inaccurate with respect to the debtor's assets and liabilities. Under those circumstances, it was unreasonable for the Bank to rely upon that financial disclosure—if it did. Indeed, since the Bank was armed with the knowledge that the debtor's financial statement was defective in certain respects, the Bank should have attempted to verify the information in the financial statement it needed in order to evaluate the debtor's eligibility for credit. *See Kentile Floors, Inc. v. Winham,* 440 F.2d 1128 (9th Cir.1971); *In re Hunt,* 30 B.R. 425 (Bkrtcy. M.D.Tenn.1983); *In re Klein,* 20 B.R. 119 (Bkrtcy.E.D.Pa.1982); *In re Keppel,* 14 B.R. 479 (Bkrtcy.E.D.Pa.1981); *In re Smith,* 2 B.R. 276 (Bkrtcy.E.D.Va.1980). Its failure to do so cannot be excused by the Bank's unjustified claim that it reasonably relied on the debtor's statement. As the court observed in *Bank of Waynesboro v. Yeiser,* 2 B.R. 98, 101 (Bkrtcy.M.D.Tenn.1979)

> This creditor cannot assume the position of an ostrich with its head in the sand and ignore facts which were readily available to it.' ... Yet this apparently was just what occurred in this instance. No questions were asked concerning any of the information appearing in the statement ... From all indications the president of the bank merely accepted the representation of a positive net worth at face value and placed the statement in the bank's files. (citations omitted)

It is apparent that the Bank permitted the debtor to submit an incomplete and inaccurate financial disclosure just to have an updated statement on file. The financial disclosure was not specifically obtained for the loan in question, and it cannot now be used as the vehicle to deprive the debtor of a discharge of the debt associated with that loan.

It is accordingly

ORDERED that Judgment enter in favor of the debtor-defendant, and the debt in the amount of $25,000.00 is dischargeable.