In re Stephanie Annicchiarico
**WALTHALL, Debtor.**

**ITT CONSUMER FINANCIAL CORP.**
**d/b/a Thorp Credit, Inc. of**
**Md., Plaintiff,**

**v.**

**Stephanie Annicchiarico WALTHALL,**
**Defendant.**

**Bankruptcy No. 82–1–1708.**
**Adv. No. 83–0126A.**

United States Bankruptcy Court,
D. Maryland,
at Rockville.

Feb. 24, 1984.

Gregory P. Johnson, James Hirschman, Landover, Md., for plaintiff.

Douglas Malcom, Greenbelt, Md., for debtor/defendant.

## MEMORANDUM OF DECISION

PAUL MANNES, Bankruptcy Judge.

This matter comes before the court upon the filing by ITT Consumer Financial Corp. (ITT), of a complaint objecting to the dischargeability of a debt incurred by Stephanie Annicchiarico Walthall (Ms. Walthall), the debtor herein. ITT asserts that Ms. Walthall's debt is nondischargeable under § 523(a)(2)(A) and (B) of the Bankruptcy Code.

The relationship between ITT and Ms. Walthall began with her purchase of furniture on credit. Ms. Walthall discovered upon receipt of the payment book for this purchase that she was indebted to Thorpe Credit, Inc. of MD (Thorpe), a subsidiary of ITT. On April 12, 1982, Ms. Walthall successfully completed her payments on this furniture purchase, and her relationship with Thorpe lapsed. Some time later, Ms. Walthall received a card from Thorpe advising her that if her income currently exceeded $12,000, she was eligible for a $1,000 loan.

Ms. Walthall testified that she ignored this solicitation for a while, but that she contacted a nearby Thorpe office on August 5, 1982 when she found she needed additional money to pay her mounting debts. Mr. Brown, the manager of the contacted Thorpe office, spoke with Ms. Walthall on August 5, 1982, and took her loan application by telephone. The information required by Thorpe included Ms. Walthall's current salary, the length of time that she lived at her current address, the reason for the loan, and the amounts of her outstanding accounts. Mr. Brown recorded this information upon an application form which was signed by the debtor when she visited the office the next day. At that visit on August 6, 1982, Ms. Walthall filled out another form entitled "Financial Statement for Purpose of Obtaining a Loan or Other Extension of Credit."

Ms. Walthall entered the names of five creditors and their respective debts in her own handwriting on this form. The amount of debt stated on this form equalled $6,758.00. Unfortunately, Ms. Walthall failed to include the debts owed to the following six additional creditors:

| | |
|---|---|
| People's Security Bank of MD | $ 951.72 |
| Bloomingdale's | 984.48 |
| Raleighs | 161.70 |
| United Virginia Bank (VISA) | 1,882.74 |
| Choice | 1,211.45 |
| Sears | 394.10 |

Although the total of the omitted debt exceeds that of the listed debts, Ms. Walthall contends that her omission of the other creditors was inadvertent. She testified that she did not list all of her creditors because the solicitation led her to believe that she need not reveal her liabilities to obtain the $1,000 loan. Ms. Walthall stated that she believed that she only needed to prove that she was earning in excess of $12,000 annually to obtain a loan. Ms. Walthall further testified that she did not remember Mr. Brown inquiring into her outstanding accounts when he took her application by telephone.

Ms. Walthall did not make the first payment when it was due on September 18, 1982. When she was contacted by Mr. Brown on October 5, 1982, regarding her default, Ms. Walthall indicated that she failed to make the payment because she did not have a payment book. Ms. Walthall did assure Mr. Brown that she would mail a payment the next day, however. Although Mr. Brown told Ms. Walthall that she had been given a payment book at the time she picked up her check on August 6, 1982, the Thorpe office promptly mailed her another payment book. Mr. Brown again telephoned Ms. Walthall on October 25, 1982, regarding her failure to make any payments. On that date, Ms. Walthall informed him that she was filing a bankruptcy petition, which she filed November 5, 1982.

ITT asserts that Ms. Walthall's debt is nondischargeable under § 523(a)(2)(A) and (B) of the Bankruptcy Code. Section 523(a)(2) provides:

§ 523. *Exceptions to discharge*

(a) A discharge under section 727, 1141, or 1328(b) of this title does not

discharge an individual debtor from any debt—

\*     \*     \*     \*     \*     \*

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

First, ITT argues that the debt is nondischargeable under § 523(a)(2)(A) because Ms. Walthall obtained the loan by false pretense. According to Thorpe, the false pretense lies in Ms. Walthall's agreement to repay the loan when she never had any intention of repaying the debt. The plaintiff carries the burden of proving each element by clear and convincing evidence. *Brown v. Buchanan*, 419 F.Supp. 199 (E.D. Va.1975); *Nationwide Financial Corp. v. Smith*, 2 B.R. 276 (Bkrtcy.E.D.Va.1980); *In re Vissers*, 21 B.R. 638, 639 (Bkrtcy.E.D. Wis.1982). The court finds that the plaintiff has failed to prove by clear and convincing evidence that the debtor never intended to repay the loan. The only evidence that ITT produced to substantiate this allegation is the fact that Ms. Walthall failed to make a single payment on the loan. The testimony given by the debtor indicates that Ms. Walthall truly believed that her new job and the infusion of these additional funds would enable her to salvage her sinking financial situation.

Although the hypothetical "reasonable person" might not have viewed the situation so sanguinely, this court declines to adopt an objective standard for determining whether the requisite intent to defraud is present. The District Court for the Middle District of Tennessee commented upon the overly optimistic debtor and the requisite intent in *In re Hunt* and concluded:

"[T]his [subjective] analysis permits the possibility that an irrational individual would conceive of an impossible scheme for repaying debt and then subjectively believe in a successful outcome. It is consistent with the overall design of the bankruptcy laws for Congress to protect those who in good faith, though based on inflated self-perceptions or miscalculations, enter into commercial transactions and incur debt. In its wisdom, Congress has chosen to allow such people to discharge their debts. Only the individual who subjectively acts in bad faith is to be penalized by a finding of nondischargeability."

*In re Hunt*, 30 B.R. 425, 440 (Bkrtcy.D.C. M.D.Tenn.1983). Although Ms. Walthall failed to appreciate the extent of her financial plight, the court cannot find any evidence to substantiate ITT's claim that the loan was entered into with no intent to repay.

Second, ITT urges that the debt is nondischargeable under § 523(a)(2)(B). The written financial statement prepared by Ms. Walthall is unquestionably materially false. Ms. Walthall's true debt level was over twice the amount represented on her financial statement. The financial statement clearly constitutes a statement respecting her financial condition.

The only part of the § 523(a)(2)(B) test contested by the debtor is whether Thorpe reasonably relied upon the financial statement and whether the debtor made the admittedly false statement with the intent to deceive. Ms. Walthall asserted that the person who accepted her financial statement assured her that she need not provide an accurate listing of all her debts. Although Ms. Walthall stated that she read the "instructions" [1] section on the financial statement, she stated that she did not feel

---

1. The "instructions" section of the financial statement reads:

that she had to list all of her debts because no criminal sanctions were threatened.

Given the explicit wording of the instructions, and Ms. Walthall's admission that she read all documents prior to signing, the court can only conclude that Ms. Walthall deliberately failed to list all of her debts to enable her to receive the desired loan. This deliberate omission of at least one-half of her outstanding debts satisfies the fifth element of § 523(a)(2)(B)—intent to deceive.

The court finds further that Thorpe reasonably relied upon this false financial statement submitted by Ms. Walthall. Thorpe checked the figures stated on the handwritten financial statement against the figures given over the telephone and against the credit report. Thorpe did not rely upon the credit report alone in making its decision to extend credit, though, because many debts incurred by a debtor do not appear on a credit report. The court concludes therefore that Thorpe reasonably relied upon the financial statement and credit application supplied by Ms. Walthall. The court cannot permit the debtor to contradict at this time the statement that she made in her own handwriting while applying for this loan.

The court concludes, therefore, that ITT has met its burden of proving that this debt is nondischargeable under § 523(a)(2)(B) of the Bankruptcy Code. An order will be entered in accordance with this opinion.

1. This statement to be completed in its entirety in your own handwriting.
2. *Do not omit any debts, judgments or other liabilities, including co-maker obligations, delinquent alimony or child support payments, tax liens, or disputed accounts, or other debts.*
3. You may take as much time as necessary to complete this form.
4. *No employee of The Lender has any right or authority to suggest or demand that you omit any indebtedness or that you include as an asset any money or property which does not belong to you.*

NOTICE—Prior to completing this form, read the following notices:
A. *A false Financial Statement may prevent this loan, or a later refinancing thereof, from being discharged in the event of Bankruptcy.*
B. With respect to a refinancing—a false Financial Statement may prevent the discharge in Bankruptcy of the entire obligation and not only a portion thereof.
C. The Lender will rely in whole or in part on the below representation as a basis for this extension of credit.
Emphasis added.