In re Perry E. EASON and Alice B.
Eason, Bankrupts.

MONTGOMERY WARD & CO.,
INCORPORATED, Plaintiff,

v.

Perry E. EASON and Alice B.
Eason, Defendants.

Bankruptcy Nos. 78–01417, 78–01418.

United States Bankruptcy Court,
E. D. Virginia,
Richmond Division.

Dec. 10, 1979.

Richard S. Gordon, Jones, Blechman, Woltz & Kelly, Newport News, Va., for Montgomery Ward & Co., Inc., plaintiff.

Malcolm M. Christian, Frank D. Lawrence, III, Christian, House, Benedetti & Lubman, Richmond, Va., for Perry E. Eason and Alice B. Eason, bankrupt/defendants.

MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

On March 10, 1979, a complaint to determine the dischargeability of a portion of a debt owing by Perry E. and Alice B. Eason (hereinafter referred to as the Easons) to Montgomery Ward & Co., Incorporated (hereinafter referred to as Ward) was filed herein. Ward alleged that the Easons, who were adjudicated bankrupt upon filing a voluntary petition on December 19, 1978, had obtained property from Ward by false representation or pretense, and therefore, said portion of a debt should be declared non-dischargeable pursuant to § 17a(2) (11 U.S.C. § 35) of the Bankruptcy Act. Specifically, they allege that the Easons knowingly issued a worthless check to Ward in payment for a previously received shipment of inventory from Ward by the Easons' Sales Agency; that the Easons knew that upon receipt of said check that Ward would release a new shipment of merchandise; that Ward relied on the check and released the inventory having the value of $7,947.56, all to their damage; and that the Easons intended to deceive Ward by their fraudulent conduct.

The Easons by answer on April 13, 1979 and amended answer and affirmative defense filed on June 6, 1979 admit that they issued the check and that they knew the check was not backed by sufficient funds when issued; they deny that they had an intent to deceive or that Ward was damaged by the issuance of said check.

The complaint was set for trial on June 11, 1979 at which time this Court heard evidence *ore tenus* and oral arguments of counsel. The Court requested and has received briefs in support of argument and upon consideration of the foregoing the Court renders the following opinion.

## STATEMENT OF THE CASE

The evidence before the Court indicates that Ward and the Easons entered into a catalog sales agency agreement on or about May 18, 1972. Pursuant to this agreement, Ward licensed the Easons to operate a Montgomery Ward Catalog Sales Agency in Emporia, Virginia. From that date through July 12, 1978, the time of the signing of the mutual termination of the catalog sales agency agreement, both Mr. and Mrs. Eason conducted the business of the agency although Mr. Eason was the primary force behind it.

Through the testimony of both Mr. Eason and Mr. Gene Padrick, Ward's area supervisor, it was learned that catalog sales agencies normally order what their customers request by teletype directly to Baltimore. The orders are packaged and sent approximately two to three times a week to the stores, but billing is on a weekly basis. If an order is not capable of being filled at the warehouse, the missing items are then ordered from various other warehouses such as parts outlet in Baltimore or Chicago. The request for items which are not available is held in the computer and as the items become available, the parts are shipped directly to the catalog sales agency. Payment for orders is by check mailed directly to Baltimore. Although orders are not paid for in advance, there is a deadline in each instance by which time a previous order must be paid for; Montgomery Ward typically stopped shipment on an agency's order if the payment for previous orders was past due. This stop-order would be released as soon as the payment was received; that is the release would be made when the check was received and not when the same was actually negotiated by Ward. Only in the case of an agency which had previously sent non-sufficient fund checks to Ward, was the agency required to pay in cash or with a certified check.

Mr. Elliott Johnson, comptroller of the Baltimore area in which jurisdiction the Emporia outlet is located, stated that the Easons' shipments had been stopped for failure to pay for a previous shipment on approximately eight to ten occasions during fiscal 1978. On each occasion Mr. Eason was contacted either by Baltimore or by Mr. Padrick's local supervisor and informed of the stop-shipment. Consonant with these instructions the stop-shipment was released upon receipt by Ward of a check covering payment for the preceding shipment for which payment had been delinquent. No checks from the Easons to Ward had ever been returned by a bank to Ward for lack of sufficient funds. This procedure had been employed over the entire term of the Easons' agreement. Mr. Eason's knowledge of this procedure was admitted during the hearing including his knowledge of the fact that receipt of his check by Ward would automatically cause the release of any shipments being held.

In this case, on June 23, 1978, payment for order No. 19 was overdue. In accordance with the normal store procedure, Mr. Johnson, comptroller, placed a hold upon all further shipments to the Emporia store. Mr. Eason was subsequently informed that shipment No. 23 had been stopped until Ward received a check in payment for shipment No. 19.

Aware of this hold on shipment No. 23, Mr. Eason instructed his bookkeeper to write Eason Sales Agency check No. 3751 in the amount of $4,604.34 for payment of shipment No. 19. The check was dated and written on June 27, 1978 and mailed directly to Ward.

At the time of the writing of the check, June 27, 1978, defendant's balance in his checking account on which the draft was written was a negative $133.21. Plaintiff's exhibits 7 and 8 (Eason Sales Agency bank account statement from June 1 to July 25, 1978) show that at no time subsequent to June 27, 1978 was there an adequate bal-

ance in the account to honor the check. At the time the account was closed on July 25, 1978 there was a balance of $2,538.08.

Mr. Eason testified that many of the checks listed on the bank statement as having been paid between June 27 and July 25 were paid to Montgomery Ward. Mr. Eason further testified that he expected to make the check good he wrote on June 27 for payment of shipment No. 19 (check No. 3751, *supra*) by selling the merchandise already on hand from previous shipments together with that he received in shipment No. 23 and then depositing the proceeds from these sales in his account. He would thereby have funds available in the account before the check was processed through banking channels for collection. His testimony was that on several occasions he followed the same procedure and had always managed to have sufficient funds in his account when his checks were presented to his bank.

The check was received by Montgomery Ward on June 29, 1978, at which time shipment No. 23 was released. The shipment was broken down into several deliveries all occurring between June 29 and July 10, 1978.

On July 10, 1978, the check was returned to Montgomery Ward by the Citizens National Bank, Emporia, Virginia, on which it was drawn marked "returned not paid, NSF."

Mr. Padrick, the area supervisor for Montgomery Ward, went to the Emporia agency to investigate the status of Mr. Eason's store. Upon arriving at the agency, he requested that Mr. Eason make the check good; however, Mr. Eason acknowledged that he was unable to do so. The store was formally closed with the signing by Mr. Eason and Mr. Padrick of a termination of sales agency agreement on July 12, 1978. Mr. Eason cooperated in the closing of the agency, the taking of inventory and responding to questions of Ward's personnel with regard to the operation of the business. The testimony is unclear as to the amount of inventory from shipment No. 23 that was on hand at the time of the termination of the sales agency agreement.

## CONCLUSIONS OF LAW

The issue before this Court is whether the Easons' debt to Ward should be declared non-dischargeable pursuant to § 17a(2) (11 U.S.C. § 35) of the Bankruptcy Act; specifically, whether the Easons' conduct in issuing the check that they knew was not backed by sufficient funds in order to effect the release of shipment No. 19, constituted obtaining property by false representation or false pretense. The Court concludes that the debt to Montgomery Ward should be discharged as the Easons' conduct in this matter does not meet the statutory and case law requirements for "false pretense or false representation."

Section 17a of the Bankruptcy Act states in part that "[a] discharge in bankruptcy shall release a bankrupt from all of his provable debts, . . . except such as . . . (2) are liabilities for obtaining money or property by false pretenses or false representations . . . ." As the parties noted in their briefs, *Sweet v. Ritter Finance Company*, 263 F.Supp. 540 (W.D. Va.1967) establishes the test that must be met by the plaintiff in order for the Court to deny a discharge to the bankrupt pursuant to § 17a(2) of the Act. The court in that case said:

"Once a person has a valid discharge in bankruptcy, . . ., he has a *prima facie* defense against all debts and the burden of proof is then on the creditor to show that the debt is non-dischargeable.

. . . . .

Not only does Ritter Finance have the burden of proof, but it is also faced with the rule that all exceptions set forth in § 17(a)(2) are to be strictly construed. . . . Ritter Finance must prove actual fraud before it can show Sweet's debt to be non-dischargeable under § 17(a)(2). In other words, Ritter Finance must show . . . that (1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and

purpose of deceiving the creditor; (4) that the creditor relied on such representations and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made." *Sweet, supra* at 542, 43.

Further, the complainant's "standard of proof is by evidence which is clear and convincing." *Brown v. Buchanan*, 419 F.Supp. 199 (E.D.Va.1975). It is not necessary for this Court to decide if elements 1, 2, 4 and 5 of the *Sweet* test *supra*, have been met as the gravamen of the case and where the plaintiff fails to sustain his burden of proof is with respect to element 3. The law is clear that:

> "[F]alse representation or false pretense claimed under § 17a(2) of the Act must be of a kind involving moral turpitude or intentional wrong; fraud implied in the law is insufficient. .. . . 'Actual fraud,' as opposed to fraud implied in the law or constructive fraud, requires intentional wrong or moral turpitude, . . and it is only this type and degree of fraud that may operate to avoid discharge in bankruptcy." *Sanitation Recycling, Inc. v. Jay Peake Lod. Association, Inc.*, 428 F.Supp. 1022, 1024 (D.C.Vt. 1977); *See, City National Bank of Baton Rouge v. Knight*, 421 F.Supp. 1387 (M.D. L.1976); *In re Taylor*, 514 F.2d 1370 (9th Cir. 1975); *In re Dolnik*, 374 F.Supp. 84 (N.D.Ill.1974); 1A *Collier on Bankruptcy* (14th ed.) § 17.16[3].

It is the actual, intentional fraud that the Court finds missing in this case; the mere writing of a check not backed by sufficient funds and the fact that at the time it was uttered Mr. Eason was aware of this fact is not enough to justify a finding of intentional fraud. His uncontroverted testimony was that on several occasions he mailed checks to Montgomery Ward with insufficient funds in his account; that he would sell the inventory subsequently received along with merchandise already in the store and then he would deposit the proceeds in the account from which the checks were to be drawn with the expectation that by the time the checks had processed through banking channels and were presented for payment, the funds on deposit would be ample to support the checks. On the occasion for which this complaint was filed, he had not been able to realize cash from the sale of his inventory quickly enough to prevent the check of June 27, 1978 from being dishonored. Support for Eason's testimony can be garnered from the fact that the account used to deposit funds from which Ward was to be paid had increased from a negative balance to $2,538.08 at the time of the closing of the account shortly after the termination of the sales agency agreement. This fact is consistent with Eason's testimony concerning his usual business practices and inconsistent with the positive fraud required for denial of discharge under the Act.

Eason also testified, again uncontested, that several times he had made requests of Ward for help in the management of his agency, but had never received the requested aid. He further testified that he particularly had difficulty in the bookkeeping and accounting aspects of his store. This evidence tends to support the conclusion .that Eason was not engaged in an intentional fraud when he issued the check of June 27.

Eason introduced evidence that he had in fact made many payments to Ward after issuing the "bad" check on June 27. This testimony was substantiated by the bank's statement of his account. Ward correctly points out that the payments Eason referred to were not monies from the sale of inventory received in shipment No. 23, but represented payments by customers on their Ward's credit card accounts, which Eason had in effect forwarded to Ward and, therefore, the payments were not an attempt to pay for the inventory Eason had received in shipment No. 19. Ward misconstrues the purpose of this evidence. It was not offered to show payment on Eason's account, but rather his good faith and his honest intentions to pay Ward any monies due them. The actions of Mr. Eason in forwarding the payments of funds to Ward, regardless of their source, is inconsistent with the actions of a person engaging in an intentional fraud or acts of moral turpitude.

608

After giving consideration to the record as a whole, the Court believes the evidence presented by the complainant is not sufficient to carry its burden of establishing by clear and convincing evidence that the bankrupt intentionally obtained property by false pretenses within the meaning of § 17a(2) of the Bankruptcy Act.