**In the Matter of Kevin Todd ANSON, Debtor.**

**Kevin Todd ANSON, Plaintiff,**

v.

**Sam HOPKINS, Fugate Ford Motors, Inc., and Orleans Trail Marina, Defendants.**

Bankruptcy No. 80–02524–SW.
Adv. No. 80–0783–SW.

United States Bankruptcy Court,
W. D. Missouri,
Southwestern Division.

March 3, 1981.

As amended June 26, 1981.

R. Deryl Edwards, Joplin, Mo., for plaintiffs.

Sam Hopkins, pro se.

Keith Brown, Nevada, Mo., for Fugate Ford Motors, Inc.

Samuel J. Short, Jr., Stockton, Mo., for Orleans Trail Marina and James Wolfe.

FINAL DECREE DECLARING THE INDEBTEDNESSES OF THE PLAINTIFF TO ORLEANS TRAIL MARINA AND FUGATE FORD MOTORS TO BE DISCHARGEABLE IN BANKRUPTCY AND TRANSFERRING COMPLAINTS FOR INJUNCTION TO THE CIVIL DOCKET OF THE DISTRICT COURT PURSUANT TO RULE 915(b) OF THE RULES OF BANKRUPTCY PROCEDURE

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff debtor in this action seeks to enjoin two separate state prosecutions of him based upon his issuance of insufficient funds checks to the defendants Orleans Trail Marina and Fugate Ford Motors. In accordance with the principles previously enunciated by this court in *Barth v. Broshot*, 4 B.R. 141, 144 (W.D.Mo.Bktcy.1980), as follows, the court initially proceeded to determine the issue of dischargeability *vel non* of the two liabilities:

"... the relevant and material factual contention is mentioned to the effect that the plaintiffs, in issuing the checks which are the subject of the state court prosecution, made concurrent false representations to the effect that their bank

account (on which the checks were drawn) contained sufficient funds to honor the checks thus issued. If this factual allegation is true, then the liability thereby created may be regarded as nondischargeable in bankruptcy and the state prosecution should accordingly not be enjoined in accordance with the authorities which properly govern this issue.

\*   \*   \*   \*   \*   \*

"If the liability is not dischargeable, the state prosecution cannot be regarded as imposing 'conflicting duties' upon the bankrupts as were deemed to warrant relief in *In re Penney*, 414 F.Supp. 1113 (W.D.N.C.1976). Thus, the state prosecution clearly could proceed without any conceivable interference in bankruptcy jurisdiction and administration."

The trial of the dischargeability issue was accordingly conducted on February 20, 1981, in Kansas City, Missouri. The plaintiff debtor appeared personally and by counsel, R. Deryl Edwards, Esquire. The defendant Orleans Trail Marina appeared by its proprietor, James Wolfe. The defendant Fugate Ford Motors appeared by its proprietor, Harold Fugate, and its counsel, Keith Brown, Esquire. And the defendant Hopkins appeared personally and as his own counsel.

## THE INDEBTEDNESS TO ORLEANS TRAIL MARINA

Based upon the admissible and probative evidence then adduced by the parties on February 20, 1981, the court, at the conclusion of the hearing, made oral findings of fact and conclusions of law to the effect that the liability is dischargeable in bankruptcy. For there had been no evidence adduced to the effect that any fraud was practiced or misrepresentation made in connection with the issuance of the insufficient funds check to Orleans Trail Marina. In his testimony, the proprietor of Orleans Trail Marina unequivocally stated that the plaintiff debtor made no statements respecting the sufficiency of funds on deposit nor any other misrepresentation in connection with the issuance of the check.[1] And, under the unbroken chain of governing legal authority, such fraud or misrepresentation in connection with the issuance of an insufficient funds check is a necessary prerequisite to nondischargeability.[2]

## THE INDEBTEDNESS TO FUGATE FORD MOTORS

With respect to the liability of plaintiff to Fugate Ford Motors, however, the evidence was clear to the effect that, in issuing a check in the amount of $5,000 to Harold Fugate on August 23, 1979, the plaintiff

1. According to Mr. Wolfe's own testimony in the trial of this action, the plaintiff made no representation in connection with the issuance of the check as to whether or not it was good or on any other matter. His testimony was to the effect that plaintiff "didn't say anything as to whether (the check) was good or wasn't good."

2. See *In re Marion Jerome Ray*, In Bankruptcy No. 78–60191–B–SJ (W.D.Mo.Bkrtcy. Dec. 4, 1978), to the following effect: "The law is clear that a check does not constitute a financial statement. *Obrist v. Christensen*, 337 F.2d 220 (9th Cir. 1964), and cases there cited. Therefore, a claim of nondischargeability can lie only under the provisions of section 17a(2) for ... 'obtaining money or property by false pretenses or false representations.' ... And, under the law governing, it is held that the rendering of an insufficient funds check, absent the making of a misrepresentation which gives rise to a liability which is nondischargeable under the provisions of section 17(2) ... (does not) give rise to a liability which is nondischarge-

able ... See, e. g. *Blue Bonnet Creamery, Inc. v. Gulf Milk Ass'n*, 172 So.2d 133, 141 (La.App. 1965) ('It must be conceded (that) an obligation arising from property obtained by the issuance of worthless checks is dischargeable in bankruptcy unless the debtor was guilty of misrepresentation to defraud in connection with the issuance of such checks.') ... '(I)f it were otherwise, a creditor could easily render his claim immune from discharge in bankruptcy by the simple expedient of demanding checks from the debtor.' *Id.* at 141 ... Other cases on this general issue appear to agree with the result in the *Blue Bonnet* case. See *Swanson Petroleum Corp. v. Cumberland*, 184 Neb. 323, 167 N.W.2d 391 (1969), explicitly purporting to follow the *Blue Bonnet* rule ..." See also *In re Eason*, 1 B.R. 604 (Bktrcy.E.D.Va.1979), to the effect that "the mere writing of a check not backed by sufficient funds and the fact that at the time it was uttered ... (the debtor) ... was aware of this fact is not enough to justify a finding of intentional fraud."

stated to Mr. Fugate that he "should have" monies sufficient to defray the check in his bank account "within a couple of days." The question therefore becomes whether this constituted a fraudulent misrepresentation giving rise to nondischargeable liability within the meaning of § 523(a)(2), *supra*.

There are other facts and circumstances which are relevant to this determination. As of August 23, 1979, the debtor owed Fugate Ford Motors the sum of $7,404.77 on an open account for various goods and services. There is no evidence of any date certain by which this sum was payable to Mr. Fugate.[3] But, on or about August 23, 1979, Mr. Fugate contacted the debtor, demanding payment in full. Whereupon the debtor appeared at Fugate's place of business and issued a check for $5,000 to Fugate Ford Motors, stating to Mr. Fugate, as noted above, that he "should have" the money in the bank "within a couple of days". In the course of the hearing of this action, the debtor testified that he based his statement that he should have $5,000 in "a couple of days" upon some prior conversations which he had had with some employees and one officer of Ryder Truck Rentals in an attempt to have Ryder "sponsor" his truck (i. e., pay him a yearly stipend for allowing Ryder's name to be printed on the outside of the vehicle) for the sum of $10,000 per year. Admittedly, these conversations had been inconclusive, consisting mainly of the debtor's inquiries of his brother, who was an employee of Ryder, and of another person whom he could not identify by name or position, but whom he nevertheless believed to be an "executive," as to whether Ryder would be interested in "sponsoring" him at

the fee of $10,000 per year. The only replies were indications that Ryder might be interested[4] and none of the details of any potential agreement had begun to be worked out. After nevertheless assuring Mr. Fugate that he could get the $5,000 "within a couple of days," the debtor contacted his brother within a "couple of days" to inquire about the status of the potential "sponsorship" contract. He was informed that no contract was currently in existence or in the offing.[5] The debtor did not inform Mr. Fugate of this information and Mr. Fugate, consequently, presented the check at the bank for payment on two separate occasions. It was dishonored for insufficient funds both times.

As noted above, in determining the dischargeability *vel non* of the $5,000 liability to Fugate Ford Motors, the court must at the outset be mindful of the axiom that the issuance of an insufficient funds check, even with knowledge of the insufficiency of funds on deposit, does not give rise to a nondischargeable liability.[6] But the additional factor necessary to establish nondischargeability—a fraud or misrepresentation in connection with the issuance of the check—may be present in this case by reason of the debtor's assurance that he would have sufficient funds in the bank within a couple of days to defray the $5,000 amount. On the basis of the foregoing findings of fact, it would be difficult to conclude that the plaintiff could have any reasonable belief that he would actually have sufficient monies in his account within two days to fund the amount of the check. But, in order for the liability to be nondischargeable under section 523(a)(2) of the Bank-

---

3. The bills which have been adduced in evidence do not specify any time within which the bills must be paid. Nor does it appear from the evidence that any extension of time was obtained by the purported payment of $5,000. Although bills were to be paid the "first of the month," these terms had not been exacted. And no mention has been made in any of the evidence of any forbearance to sue.

4. None of the conversations, the plaintiff freely admitted in his testimony, had come close to settling upon the amount of the annual stipend, if any were to be paid.

5. According to plaintiff's subjective protestations in his testimony, this was really the first intimation that he had that the "sponsorship" contract was not a possibility.

6. See *In re Eason, supra* note 5.

ruptcy Code, the misrepresentation must have been the means by which the debtor obtained "money, property, services, or an extension, renewal, or refinance of credit," and there is no evidence of this in any respect in the action at bar.[7]

█ Further, even if it could be said that the plaintiff obtained, by means of the representation, some benefit, tangible or intangible, from defendant in the form of an extension of time in which to pay the remainder of the indebtedness, the courts have been very strict in not granting a decree of nondischargeability unless there is clear evidence of the intention of the debtor to defraud.[8] And the district court's decisions on that issue have to date failed to uphold any decree of nondischargeability in actions in which there is not demonstrated an actual *subjective* intention to defraud.[9] While this is a higher standard than other

decisions appear to impose[10] this court appears bound to follow it. In this case, the plaintiff has denied any attempt to defraud in asserting that he believed that he could obtain the money. Under the holdings of the district court, this court may not examine the reasonableness of that belief to determine whether, regardless of whether the plaintiff believed it to be reasonable, he should have known that it was not.[11]

█ Therefore, the court is compelled to enter a decree of dischargeability on the indebtedness to Fugate Ford Motors. Accordingly, under the principles enunciated previously in *Barth v. Broshot, supra*, the complaint for injunction must be transferred to the civil docket of the district court under Rule 915(b) of the Rules of Bankruptcy Procedure.[12]

Accordingly, it is hereby

---

7. "(T)he objecting party's burden of proof consists of five elements: ... '(1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; and (5) *that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made." In re Taylor*, 514 F.2d 1370, 1373 (9th Cir. 1975). (Emphasis added.)

8. See note 7, *supra*. See also *In re Hervia Lee Roberts*, 8 B.R. 291 (W.D.Mo., 1981) ("A good faith belief, even though unreasonable, precludes a wilful and malicious intent.") But the meaning of "Willful and malicious" under the Bankruptcy Act was the equivalent of "intentional." "The word 'wilful' means nothing more than intentionally doing an act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury." 1A Collier on Bankruptcy para. 17.17, pp. 1650.4, 1652 (1976).

9. See note 8, *supra*. See also the observations made by this court in the recent decision in *In re Byers*, Adversary Action No. 80–0062–3 (W.D.Mo.Bkrtcy. Dec. 15, 1980), to the following effect: "(T)he district court evidences an increasing hostility toward bankruptcy court decrees of nondischargeability and judgments denying discharge. See, e. g., *In re Bellmer*, In

Bankruptcy No. 78–60316–B–SJ, District Court Civil Action No. 79–6042–CV–SJ (W.D.Mo. May 29, 1980), in which the district court, in an action governed by the former Bankruptcy Act, nullified, on the question of intent to deceive, the 'reckless disregard' standard, set forth in *In re Gardner*, 566 F.2d 928, 929 (5th Cir. 1978) ("(T)he Bankruptcy Act only requires that the bankrupt either had actual knowledge that the statement was incorrect or had reckless indifference to the actual facts.") See also *Matter of Bardwell*, 610 F.2d 228, 229 (5th Cir. 1980) ("Obtaining credit by a materially false financial statement will prevent bankruptcy discharge if the bankrupt either had actual knowledge of the falsity of the statement or demonstrated reckless indifference to the accuracy of the facts stated therein.") See also cases cited in 1 CCH Bankruptcy Law Reporter p. 3189. In holding that a plaintiff in such a case must prove *'subjective'* intent, the district court cited no applicable authority." (Emphasis added.)

10. See note 9, *supra*.

11. See note 8, *supra*.

12. Section 105 of the new Bankruptcy Code gives the courts of bankruptcy power to enjoin state court proceedings, but, during the transition period, the power may be exercised only by the district judges. See section 405(a) of P.L. 95–598.

ORDERED, ADJUDGED, AND DE-CREED that the plaintiff's indebtednesses to Orleans Trail Marina and Fugate Ford Motors be, and they are hereby, declared to be dischargeable in bankruptcy. It is further

ORDERED that the complaint for injunction in this action be, and it is hereby, transferred to the civil docket of the district court under Rule 915(b) of the Rules of Bankruptcy Procedure.