**In re Mitchell Ray HOLT, Individually and t/a Holt's Heating and Air Conditioning, Debtor.**

**AIRCON DISTRIBUTORS, INC., Plaintiff,**

**v.**

**Mitchell Ray HOLT, t/a Holt's Heating and Air Conditioning, a General Partnership, Defendant.**

**Bankruptcy No. 81–01746.
Adv. No. 81–0293–R.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Nov. 4, 1982.

R. Shawn Majette, William C. Parkinson, Jr., Richmond, Va., for plaintiff.

L.D. Catlett, Richmond, Va., for defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes on upon the filing by Aircon Distributors, Inc. (Aircon), of complaints pursuant to 11 U.S.C. § 523(a)(2)(A) seeking debts owed Aircon to be declared nondischargeable. After hearing and upon the submission of briefs this Court makes the following determination.

## STATEMENT OF THE FACTS

Mitchell Ray Holt and Dean Holt were general partners in a business trading under the name of Holt's Heating and Air Conditioning. The Holts purchased material for their business from Aircon and Aircon was listed on their petitions in bankruptcy as an unsecured creditor in the amount of $10,500.00. During July 1981, the Holts submitted four checks to Aircon for merchandise in the amount of $5,533.03. Aircon delivered the merchandise and thereafter the checks were returned to them marked nonsufficient funds. These four checks were issued between July 7, 1981 and July 23, 1981 and each was signed by Mitchell Holt. The four checks were written for the amounts $2,470.92, $289.89, $1,263.89, and $1,571.33, respectively. Before issuing the first two checks the Holts deposited $1,540.00 in their account. Before issuing the next two checks, they deposited $3933.00.

From the testimony at trial, it appears that the Holts engaged in an unorthodox practice of keeping business records. The Holts in their business account never balanced their checkbook and ran their business by continually making deposits into their business checking account and writing checks on that account. Often their bank dishonored their checks as the funds in their account fluctuated. When the Holts were notified that a check had been returned, Mitchell Holt paid the creditor holding the check cash in the amount of the returned check. Mitchell Holt seldom read his bank statements and relied on his creditors to notify him when checks written to them were returned marked nonsufficient funds. Mitchell Holt testified that whenever he was notified that a check had been returned, he made that check good.

After the checks issued to Aircon were returned marked nonsufficient funds, Aircon did not contact the Holts. Instead, Aircon continued accepting the Holts' checks during the months of August and September as payment for later purchases and did not notify them of any problems. The Holts were not aware that the checks to Aircon had been returned until two weeks before they filed their petitions in bankruptcy when an attorney representing Aircon contacted the Holts and demanded payment. The Holts offered to make the checks good and proposed to pay through installments the balance owed on the checks. Aircon's attorney rejected this proposition. Shortly thereafter, on October 13, 1981, the Holts filed their petitions with this Court.

Although Mitchell Holt signed the checks, he has only a fifth grade education and does not know how to maintain a checkbook or to keep business records. His routine business procedure entailed depositing money received from work completed in his checking account and writing checks to creditors whenever necessary. He did not keep a running balance in his checkbook. Whenever he discovered a check had been returned to a creditor marked nonsufficient funds he would make the check good. Holt testified that, except for the four checks written to Aircon, he purchased from the holders all the returned checks he knew about.

Except for his partnership relationship to Mitchell Holt, Dean Holt had no connection to the issuance of the checks to Aircon.

## CONCLUSIONS OF LAW

Aircon contends the Holts issued the checks knowing their business account contained insufficient funds to pay them or in the alternative that the Holts recklessly disregarded the truth as to the worth of the checks presented Aircon.

■■■ A debt for obtaining money or property by false pretenses or false representations may be rendered nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(2)(A) provided that the objecting creditor can show the existence of each of the following elements:

"(1) the debtor made the representations;

(2) that at the time he knew they were false;

(3) that he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations; and

(5) that the creditor sustained the alleged loss and damage as a result of the representations having been made."

*Sweet v. Ritter Finance Co.,* 263 F.Supp. 540, 543 (W.D.Va.1967). Courts must strictly construe the exceptions set forth in 11 U.S.C. § 523(a)(2). *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). The objecting creditor must prove the existence of each of these elements by clear and convincing evidence. *Brown v. Buchanan,* 419 F.Supp. 199 (E.D.Va.1975).

The central issue this Court faces is whether the Holts intended to defraud Aircon at the time they issued the checks for which there were insufficient funds in their business account. A review of the Holts' business practices and customary procedures indicates they did not intend to defraud Aircon at the time they issued the checks. The Holts kept poor records of their business transactions and never balanced their checkbook, possibly because of their limited educational backgrounds. Their business practices included continually making deposits into their business checking account and writing checks on

that account. If a check were dishonored, Mitchell Holt testified he would purchase the returned check from the creditor who held it. No evidence was proffered at trial to contradict this testimony. Checks issued by the Holts to Aircon in the amount of $5,533.03 were returned marked nonsufficient funds; however, Aircon did not contact the Holts concerning the checks until shortly before they filed their petition in bankruptcy. Instead, Aircon continued dealing with the Holts as they had before the four checks were written. When Aircon approached the Holts and told them the four checks had been returned earlier marked nonsufficient funds Mitchell Holt offered to pay in installments the balance owed on the checks. Whether Holt would have kept this promise is speculative, because Aircon declined the offer.

■ The law is settled that a false representation pursuant to 11 U.S.C. § 523(a)(2)(A) must be of a kind involving moral turpitude or intentional wrong. *In re Eason,* 1 B.R. 604, 607 (Bkrtcy.E.D.Va. 1979). A debt is declared nondischargeable pursuant to this section only if the debtor has engaged in actual fraud as opposed to fraud implied in law or constructive fraud. *Id.*

■ Aircon suggests a Virginia criminal statute, *Va.Code Ann.* § 18.2–183 which makes the uttering of a check without sufficient funds prima facie evidence of intent to defraud, may be used by this Court to infer the existence of fraudulent intent in bankruptcy. Bankruptcy law is distinct from criminal law and state statutes do not affect the burdens of proof the parties bear in dischargeability proceedings. In this Court the creditor must prove by clear and convincing evidence the debtor intended to defraud that creditor in order for a debt based upon that transaction to be determined nondischargeable.

■ The plaintiff's complaint must fail absent clear and convincing evidence that the debtor knowingly made false representations through uttering a worthless check for the purpose of deceiving the creditor.

In *Eason* the defendants admitted they knew at the time they issued the check it was not backed by sufficient funds; however, the plaintiff failed to show the debtor engaged in any intentional fraud when he uttered the check. *Eason* at 607. In the instant case there is insufficient evidence for the Court to conclude that the debtors knew at the time they wrote the checks that there were insufficient funds in their bank account to cover the checks. Courts do not find the existence of actual fraud in these circumstances. *See, e.g., In re Anderson,* 10 B.R. 296, 298 (Bkrtcy., W.D.Wis. 1981); *In re Crivello,* 1 B.C.D. 168, 170 (Bkrtcy., N.J.1974). "... [T]he mere writing of a check not backed by sufficient funds and the fact that at the time it was uttered ... (the debtor) ... was aware of this fact is not enough to justify a finding of intentional fraud." *Eason* at 607. *See also, In re Lo Bosco,* 14 B.R. 739, 742 (Bkrtcy.E.D.N.Y.1981); *In re Montbleau,* 13 B.R. 47, 49 (Bkrtcy., Mass.1981).

There is no evidence that Mitchell Holt intended to defraud Aircon at the time he issued the four checks. In light of his unorthodox check keeping procedures it appears he thought his business checking account contained sufficient funds to cover the cost of the merchandise he purchased from Aircon. Furthermore, Mitchell Holt's course of conduct over the months he was in business with Dean Holt indicate that he promptly paid all bad checks. He failed to reimburse Aircon for the checks because he was not notified that they had been returned to Aircon. Several months later, after notification that the checks had been returned, he proposed an installment payment plan to satisfy this debt. Finally, even after the checks were returned to Aircon, Aircon continued to deal with the Holts and to accept checks as payment.

An appropriate Order will issue.