**In re Roy D. COLLINS, a/k/a Jay Morgan, Debtor.**

**JACK MASTER, INC., d/b/a J. & J. Masters Oil Company, L.D. Rhodes Oil Company, Paul Penley Oil Company, Inc., Plaintiffs,**

v.

**Roy D. COLLINS, a/k/a Jay Morgan, Defendant.**

**Bankruptcy No. BK–82–01078.**
**Adv. Nos. 82–0287, 82–0281 and 82–0283.**

United States Bankruptcy Court, W.D. Oklahoma.

March 10, 1983.

Jerome H. Blumenthal, Oklahoma City, Okl., for debtor.

Wayne Campbell, Oklahoma City, Okl., for L.D. Rhodes Oil Co.

Don M. Claunch and Robert Morgan, Jr., Oklahoma City, Okl., for Paul Penley Oil Co.

Gary C. Rawlinson, Oklahoma City, Okl., for Jack Masters, Inc., d/b/a J. & J. Masters Oil Co.

## MEMORANDUM OF DECISION AND JUDGMENT

RICHARD L. BOHANON, Bankruptcy Judge.

This is a proceeding contesting discharge upon Adversary Complaints raising the question of the dischargeability, *vel non,* of three separate debts. Each debt was admittedly incurred by the debtor, and each debt has been reduced to judgment in state court. All three complaints contain common questions of law with regard to the debtor's conduct and have been consolidated here. The debtor, who appeared at trial only through counsel, has used both the names Roy David Collins and Jay Morgan. The debtor's business during the relevant period was retail sales of gasoline and related products.

By agreement of the parties the trial was held upon proferred testimony by stipulation of counsel. As such, the material facts necessary for adjudication of the dispute are limited. Each of the complaints, more fully detailed below, seeks a determination that the defendant owes a sum certain and that the indebtedness was created by the debtor through false pretenses, false representations or actual fraud. Accordingly, each plaintiff contends that the indebtedness is outside the protective scope of general bankruptcy discharges by virtue of 11 U.S.C. § 523(a)(2)(A).[1]

---

1.  § 523. Exceptions to Discharge.

    "(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

    (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

    (A) false pretenses, a false representation, or actual fraud, . . . . "

Plaintiff, Paul Penley Oil Company, Inc., has filed its Adversary Complaint seeking to have its debt excepted from the discharge. Penley's complaint rests on allegations that debtor failed to keep or produce any recorded information and that debtor has failed to explain his deficiency of assets to meet liabilities under 11 U.S.C. § 727(a)(3) and (5).[2] However, Penley's *ore tenus* motion at trial to amend its Complaint was granted so it now alleges only that the debtor made false and fraudulent representations in obtaining merchandise. Penley claims damages in the amount of $10,710.55 due on a C.O.D. sale of gasoline to debtor.

█ Penley asserts that when its agent arrived at the debtor's place of business with a gasoline delivery, the debtor represented to the agent that the sale was to be on credit rather than C.O.D. Penley says that the debtor informed the agent such credit terms had prior approval of Penley's president, but that no such approval had actually been given. The record and testimony is unclear whether the driver sought to verify the change from C.O.D. to credit. No testimony was offered which, assuming the debtor misled plaintiff's driver on the payment terms, demonstrates that such statement would have been material here or that such statement was made with the intent to deceive.

Based on these facts Penley claims it was fraudulently induced to pass property to the debtor and therefore the debt arising out of this transaction should not be discharged pursuant to § 523. Penley's case rests upon an assumption that the debtor intended to misrepresent the terms and upon a theory of implied fraud rather than positive proof of moral turpitude. This is insufficient for the proof must show *affirmatively* that the representations were made knowingly and fraudulently. See *Matter of Slutzky,* 22 B.R. 270 (Bkrtcy.E.D.Mich.S.D.1982); *In re Petrini,* 23 B.R. 981 (Bkrtcy.E.D.Penn.1982). Therefore, Penley has not met its burden under § 523(a)(2)(A).

Plaintiff L.D. Rhodes Oil Company seeks to have its debt of $6,936.16 and judgment excepted from discharge. Rhodes shows that the debtor has paid some $2,785.00 on the debt. Its complaint is premised on the allegation that the debtor promised to pay for gasoline but simply refused and failed to do so upon delivery. It alleges the debt was created by the debtor's purchase of gasoline, which was accomplished by false pretense, false representations and actual fraud. Rhodes contends the debtor agreed to pay for the gasoline in cash upon delivery. It testified that gasoline was deposited in the debtor's storage unit without payment. When it went to collect the debtor could not be located and Rhodes was unable to withdraw the gasoline. It now offers its state judgment as proof of the debt and by implication asserts the debt was created by false pretense. It claims reliance on the debtor's promise to pay C.O.D. and contends when this was not done a case for false pretense is made. However, this logic is too attenuated to deny discharge under the Bankruptcy Code.

█ Cases have held that a mere promise to be carried out in the future is not sufficient to bar discharge of a debt, even though there is no excuse for the subsequent breach. See *Warner v. Jeter,* 115 Ga.App. 6, 153 S.E.2d 626 (Ga.App.1967); *Proctor Securities Corp. v. Handler,* 7 Misc.2d 9, 162 N.Y.S.2d 209 (1957). In addition, the type of fraud contemplated by the discharge provisions of § 523 sound in tort and not in contract. *In re Hollister,* 13 B.R.

---

**2.** § 727. Discharge.

(a) The court shall grant the debtor a discharge, unless—

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

. . . .

178 (Bkrtcy.N.D.Texas 1981). The burden is on the plaintiff to show a present intent not to fulfil the promise. A reckless statement as to the contractual terms of payment is not sufficient. *In re Jenes,* 18 B.R. 405 (Bkrtcy.S.D.Fla.1981). Moreover, the debtor's subsequent partial payment mitigates the inference of the necessary intent to defraud or obtain the gasoline by false pretenses.

Plaintiff, Jack Masters, Inc., d/b/a J. & J. Masters Oil Company, also filed its Adversary complaint seeking to have its debt of $40,774.68 excepted from discharge under both § 523(a)(2)(A) and 11 U.S.C. § 727(a)(3). However, at the hearing it voluntarily dismissed its claim under § 727(a)(3).

On January 30 and February 2, 1982, Masters and the debtor entered into transactions for the purchase of gasoline. On February 5, 1982, the debtor issued Masters a check in the amount of $10,428.79 as payment and simultaneously ordered additional gasoline. The debtor issued another check to Masters on February 9, 1982, in the amount of $8,967.07 and it delivered an additional $20,942.88 worth of gasoline. Subsequently on February 10, 1982, yet another check was issued to Masters by the debtor. This check was in the amount of $9,096.16. Masters admits it did not investigate the debtor's credit rating during this period. Following these check transactions in February and some twelve days after the first check had been issued, Masters discovered there were insufficient funds in the debtor's account to cover the first two checks. Masters alleges that on February 19, 1982 it learned the third check issued by the debtor would also be returned due to insufficient funds.

Based on these transactions Masters subsequently obtained a judgment in state court against the debtor for $36,435.49. By reason of all the above actions with the debtor, Masters alleges the debtor falsely and fraudulently represented himself to be solvent by making payment for deliveries with checks he knew to be insufficient. Masters admits it agreed to provide gaso-line to the debtor on credit with payment to be made by check. Transactions under these terms took place on at least three separate occasions. Its claim for non-dischargeability of the debt is based on the debtor issuing checks for the gasoline which subsequently were dishonored.

Masters' position is that the insufficient fund checks are prima facie evidence of false pretense and that by uttering a check the debtor warranted his solvency. This position is contrary to law. The issuance of a check does not constitute a statement of financial condition. See *Orbist v. Christensen,* 337 F.2d 220 (9th Cir. 1964); *In the Matter of Anson,* 9 B.R. 741 (Bkrtcy.W.D.Mo.1981).

In order for the dishonored check to be evidence of intent to defraud, Masters must prove the debtor represented the check was good for payment since an NSF check alone is not conclusive evidence of an intent to defraud within § 523(a)(2)(A). *In re Robinson,* 266 F. 970 (1st Cir.1920); *In re Jenes, supra; In the Matter of Anson, supra; In the Matter of Wise,* 6 B.R. 867 (Bkrtcy.M.D.Fla.1980).

Masters has not come forward with proof sufficient to establish that the checks were issued with the intent to defraud or obtain the gasoline by false pretenses. No specific acts of representation that the checks were good have been proven. Instead, Masters states that the debtor "represented and warranted himself to be solvent by making payments for previous deliveries with checks the defendant knew to be insufficient . . . ." This proves nothing as to the element of intent based on moral turpitude needed for non-dischargeability due to NSF checks. To be denied discharge under § 523, the debt must have been incurred through actual fraud or misrepresentation, not implied fraud. Simply issuing a worthless check to purchase goods does not in itself constitute fraud. The plaintiff must show that the debtor was guilty of misrepresentation with intent to defraud in direct connection with issuance of the check. *Blue Bonnet Creamery, Inc.*

*v. Gulf Milk Assoc.,* 172 So.2d 133, 141 (La. App.1965); *In re Jenes, supra.* Masters has failed to establish that the debtor made the necessary representation in connection with issuance of the check and therefore the element of purposeful intent is lacking.

■ Common to each of the complaints is a charge of false pretense, false representation or actual fraud pursuant to 11 U.S.C. § 523(a)(2)(A). An unbroken chain of decisions shows that for a debt to be determined non-dischargeable under this section the false representation or false pretense must involve moral turpitude or intentional wrong. And, the representations must have been made knowingly and fraudulently and relied upon reasonably by the other party. *American National Bank of Denver v. Rainguet,* 323 F.2d 881 (10th Cir.1963); *In the Matter of Anderson,* 10 B.R. 296 (Bkrtcy.W.D.Wis.1981). The burden of proof is on the party objecting to prove affirmatively each element.[3] *In re Taylor,* 514 F.2d 1370 (9th Cir.1975); *accord In re Bradford,* 22 B.R. 899 (Bkrtcy.W.D.Okla. 1982); *In re Wingfield,* 15 B.R. 647 (Bkrtcy. W.D.Okla.1981).

■ It is insufficient for the plaintiffs to prove implied fraud. Their burden is to show intentional or positive fraud by overt acts which the debtor undertook intentionally. Merely reckless representations are not enough .to bring the debtor within the scope of § 523(a)(2)(A). *In re Jenes,* 18 B.R. 405 (Bkrtcy.S.D.Fla.1981); *In the Matter of Anderson,* 10 B.R. 296 (Bkrtcy.W.D. Wis.1981). Moreover, any exception to the dischargeability of a debt is to be strictly construed against the objectors and liberally in favor of the debtor. *In the Matter of Vickers,* 577 F.2d 683 (10th Cir.1978); *In re Wingfield, supra* at 649. This purpositive

construction in favor of the debtor is intended to support the "fresh start" policy underlying the legislation. *See e.g., In re Kokoszka,* 479 F.2d 990, 997 (2d Cir.1973) *aff'd sub nom., Kokoszka v. Bedford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974).

■ Applying these principles to the facts established by this record, the Court is not persuaded that the objecting creditors have sustained their burden. Although we do not condone the practices of the debtor, a sufficient case has not been made to demonstrate the requisite degree of intent necessary to deny discharge of the debts. Neither an implied intent to defraud, without more, nor reliance based on contractual arrangements will stand in the way of discharge.

The decisions which the plaintiffs offer to support their position only serve to illuminate the crucial component absent in their cases. They cite *In re Trindle,* Bk–78–02010 [unreported but summarized in 1978–1981 Transfer Binder Bankr.L.Rep. (CCH) par. 67,211 (Bankr.W.D.Okla. Sept. 4, 1979) ];[4] *In the Matter of Torrens,* 7 B.R. 229 (Bkrtcy.S.D.Fla.1980); and *In the Matter of Anderson,* 10 B.R. 296 (Bkrtcy.W.D. Wis.1981). Each of these cases involve the issuance of a NSF check as the basis for denying discharge of a debt.

As stated in *Anderson, supra,* the party alleging fraud must prove actual or positive fraud and not merely fraud implied by law. *Id.* at 297. Thus, issuance "of a check subsequently returned for insufficient funds does not in all circumstances create a debt which is non-dischargeable under § 523(a)(2)(A)." *Id.* From the facts in *Anderson* that court found sufficient evidence of fraud to deny discharge of the debt. The

---

**3.** Since § 523(a)(2)(A) includes little substantive change from § 17a(2) of the Act of 1898, case law interpreting the latter section would be equally applicable.

This section of the Code, derived from the pre-Code law, has no specific provisions allocating the burden of proof in a contested discharge proceeding, thus, Bankruptcy Rule 407 is still controlling and applicable. Bankruptcy Rule 407 provides that the plaintiff on a complaint

objecting to dischargeability of a particular debt has the burden to establish with the requisite degree of proof each and every element of its prima facie case. *In the Matter of Wise,* 6 B.R. 867 (Bkrtcy.M.D.Fla.1980).

**4.** *In re Trindle* is an unreported case and therefore will not be considered here since it adds nothing to the similar case of *In re Torrens* distinguished *infra.*

court cautioned however that "[t]he standard used to determine whether the fraud or an intentional wrong is of sufficient degree to bar discharge of a debt varies." *Id.* at 298. Thus, as to the intent to defraud, plaintiffs have not shown sufficient evidence to bring them under the holding in *Anderson.*

*In the Matter of Torrens, supra,* is even more distinguishable on its facts. There the debtor presented a check to his bank for the amount of $3,500 when his account showed a balance of only $27.08. Because of the lack of sufficient funds the bank, at first, refused to cover the check. Yet, after discussion with the debtor the bank acquiesced, based upon the debtor's representation that he would make a sufficient deposit that same day. In reliance upon that statement of intent the bank advanced the funds. No deposit was made on the promised date. In addition, when the debtor did make deposits into his accounts with checks drawn on other banks these checks were also dishonored and the belated deposit was futile. On these facts the Court refused to grant discharge. The decision turned on the fact that the debtor fraudulently misrepresented to the bank that he would cover the $3,500 advanced on his check. In the instant case, plaintiffs offer no positive evidence that the debtor represented to them that his check would be good. Therefore, *Torrens* is distinguishable.

Accordingly, considering the evidence presented on this record and the applicable legal principles this Court is compelled to conclude that plaintiffs Penley Oil Company, Inc.; Jack Masters, Inc., d/b/a J. & J. Masters Oil Company; and L.D. Rhodes Oil Co., have each failed to sustain their burden under 11 U.S.C. § 523(a)(2)(A).

Therefore, it is

ORDERED, that judgment be entered in favor of the debtor, Roy David Collins, a/k/a Jay Morgan denying the objections sought by plaintiffs.