In re John Curtis BRADFORD, Debtor.

**WICKMAN MACHINE TOOLS, INC., Plaintiff,**

v.

**John Curtis BRADFORD, Defendant.**

**Bankruptcy No. Bk–81–01486.**
**Adv. No. 81–00254.**

United States Bankruptcy Court,
W. D. Oklahoma.

Sept. 7, 1982.

John B. Heatly of Fellers, Snider, Blankenship, Bailey & Tippens, P. C., Oklahoma City, Okl., for plaintiff.

Robert Leyton Wheeler and Thomas S. Bala of Robert Leyton Wheeler, Inc., Oklahoma City, Okl., for debtor-defendant.

### MEMORANDUM ORDER

DAVID KLINE, Bankruptcy Judge.

### STATEMENT

Complainant Wickman Machine Tools, Inc., urges that the debtor John Curtis Bradford published a false financial statement upon which the plaintiff relied to extend credit, thus making the debt exceptable from discharge under 11 U.S.C. § 523(a).

## ISSUES

1) Did the plaintiff-creditor rely upon the financial statement of the debtor as required by U.S.C. § 523(a)(2)(B)(iii)?

2) Was the financial statement published within the meaning of 11 U.S.C. § 523(a)(2)(B)(iv)?

## FACTS

1) John Curtis Bradford, an entrepreneur, made substantial sums of money during the Vietnam Conflict. During the early 1970's Mr. Bradford had sizeable financial troubles associated with Internal Revenue Service auditing.

2) After a series of business reversals, Mr. Bradford went to work for his two sons in a business called Brad's of Alabama. By trade Mr. Bradford was an experienced, accomplished machinist.

3) Sometime in September of 1980, the debtor went to Chicago and from a sales representative of the plaintiff received information about a machine lathe. This was the only contact the debtor had with the plaintiff except for a letter dated October 6, 1980 wherein the debtor thanked Wickman for his help.

4) Eventually Brad's of Alabama "struck a deal" with Wickman to lease two lathes. Macrolease International, Inc. (herein Macrolease) did the financing. The debtor had no further direct contact with either Wickman or Macrolease.

5) On June 30, 1980, the debtor prepared a financial statement showing a net worth of $1,887,900.00. The debtor testified that this financial statement was made for the First National Bank of Lake Tahoe, Nevada, but that it was never sent because the bank repossessed a car that the debtor owned, which was subject to a security interest held by the First National Bank of Lake Tahoe, Nevada. The debtor testified that he got the figures used on the financial statement from his head and that he had no knowledge of the actual value of the listed assets or whether he still had title to the property in Gadsden, Alabama or the two oil rigs in South Africa. The debtor also listed oil properties which he knew had been transferred by court order on March 30, 1979, a year prior to the preparation of this financial statement.

6) The debtor further testified that after the vehicle was repossessed, he placed the financial statement in his office file cabinet and never saw it again until it was shown to him at his deposition taking in this case. The debtor also testified that he had no knowledge of how Wickman or Macrolease received a copy of the financial statement.

7) Daniel West of Macrolease, testified that the contents of the financial statements of the various guarantors were orally given to Wickman prior to September 30, 1980.

8) Mr. Ben Benefield, President of Brad's of Alabama, testified that he pulled the financial statement of the debtor from the file and sent it to Macrolease without the debtor's knowledge.

9) Sometime during the latter part of October, 1980 an arrangement was made between Wickman, Macrolease and Brad's of Alabama concerning the sale of the two lathes. On October 30, 1980, Brad's picked up the two lathes after a delay while Wickman was getting confirmation of the financing with Macrolease. Also during October, Macrolease contacted Brad's about getting a personal guarantee from the debtor.

10) Mr. Ronald Mitori, the Chief Financial Officer of Wickman Machine Tools, Inc., stated that he had the information contained in the financial statement of the debtor Bradford at least by December 8, 1980.

11) On October 17, 1980, Mr. Mitori wrote a memorandum by Bryan T. Heaven, President of Wickman Machine Tools, Inc. saying: "Let me put it this way, if this were my money, I would not invest in John Bradford."

12) On January 8, 1981, Macrolease sent a letter to Wickman asking for Wickman to totally guarantee the transaction or it would not finance the deal. On January 30, 1981, Ben Benefield, Ron Mitori and Tom

Reznicek (both of Wickman) and counsel for both Brad's of Alabama and Wickman, met in Chicago. There they worked out a new agreement, a part of which was for the debtor to personally guarantee the lease.

13) On March 2, 1981, Wickman received the personal guarantee of the debtor and a copy of the UCC–1 on the two lathes. On March 12, 1981, Wickman notified Brad's of Alabama of being in default on the contract. Subsequent to the default, Brad's of Alabama went into bankruptcy and Wickman received the two lathes back. The lathes were sold pursuant to court order in Alabama.

14) On August 26, 1981, the debtor filed his petition in bankruptcy. On September 30, 1981, Macrolease sent a copy of the debtor's personal financial statement to Wickman.

## LAW

### Burden of Proof

■ The plaintiff, objecting party, has the burden of proving by a fair preponderance of the evidence that a particular debt is not dischargeable as falling within a specific discharge exception. *In re Taylor*, 514 F.2d 1370 (CA 9 1975). Accord *Bank of Meeker v. McGinnis*, 586 F.2d 162 (CA 10 1978); *In re Duiser*, 8 B.R. 397, 400 (WD Va. 1981). Read *Cowans Bankruptcy Law and Practice* (2nd Ed. 1978), § 254 p. 309.

### Code Section—False Written Financial Statement

11 U.S.C. § 523(a)(2)(B) states:

"(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal or refinance of credit, by—

(B) use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive."

### Elements

■ The false financial statement must be made or published with intent to deceive, the statement must be materially (not incidentally) false and the creditor must to its detriment reasonably rely thereon. *In re Archangeli*, 6 B.R. 50, 7 BCD 63, 64 (D Me. 1980). See also H.R.Rep.No.95–595, 95th Cong., 1st Sess. (1977) at 130, U.S.Code Cong. & Admin.News 1978, p. 5787.

### Intent

■ The misrepresentation, whether written or oral, must be given with intent to deceive. *In re Banasiak*, 8 B.R. 171, 173 (Bkrtcy. MD Fla. 1981). Read *Beneficial Finance Company of Charleston v. Collins*, 151 W.Va. 479, 153, S.E.2d 221, 226 (1966); *Beneficial Finance Company of Manchester v. Machie*, 6 Conn.Cir. 37, 263 A.2d 707, 710 (1969). Such must be an actual, overt, false pretense or representation or made with a reckless disregard for the truth tantamount to willful misrepresentation. *Morimura v. Taback*, 279 U.S. 24, 49 S.Ct. 212, 73 L.Ed. 586 (1928). *Wright v. Lubinko*, 515 F.2d 260, 263 (CA 9 1975). *In re Houtman*, 3 BCD 1403, 568 F.2d 651 (CA 9 1978). *In re Richards*, 7 B.R. 711, 714 (Bkrtcy. SD Fla. 1980). Cf. *First Nat. Bank, Dayton, Ohio v. Wright*, 8 B.R. 625, 628 (Bkrtcy. SD Ohio 1981). *In re Rickey*, 8 B.R. 860 (Bkrtcy. D Fla. 1981). 3 *Collier* (Ed. 15) 523–61, and cases cited. Cf. *In re Burton*, 4 BCD (BC N.Y. 1978).

### Reliance

■ Direct reliance is not always necessary. *In re Namenson*, 555 F.2d 1067 (CA 1 1977); *cert. den.* 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142 (1977). So long as the damaged party relies upon the misrepresentations, the debt can be excepted from discharge. And only reliance upon what is in those documents is required. *In re Sheridan*, 34 F.Supp. 286 (DC N.J. 1940). The

**902**

reliance can be implied if properly inferable such as where the financial "statement was asked for and furnished as a basis for credit, and the relation between the representation and the shipment of the merchandise was so close that the conclusion is only reasonable that the creditor parted with the merchandise on the strength of the representations . . ." *In re Reed,* 191 F. 920 (DC Okl. 1911). Accord *In re Kraemer,* 17 F.2d 110 (DC Mn. 1927).

## CONCLUSION

■ The debtor Bradford prepared the instant materially false financial statement with no effort made to verify the basic accuracy thereof. Actually he had no reasonable ground to believe in its truth. And, it is only inferable that this three party transaction would never have been consummated absent reliance upon the debtor as guarantor as supported by said financial statement. Prior to such guaranty, the factor, Macrolease, had denied credit based upon principal Brad's of Alabama's Dun & Bradstreet report, copies of held government contracts and its financial statement. As to "intent to deceive" the court cannot believe that the debtor as a matter of mere coincidence made his financial statement on the same day as that of the other guarantor. Addedly, it is difficult to believe the debtor's financial statement was actually prepared for the benefit of a bank that had repossessed debtor's car in the prior year, as the debtor testified. Moreover, the financial statement inaccuracies are inexcusable. Oil rigs located in South Africa which hadn't been possessed or seen for some seven or eight years were listed. Income was greatly exaggerated. Liabilities were markedly understated.

Accordingly, it is ORDERED and ADJUDGED that:

1) Wickman Machine Tools, Inc. is granted judgment against debtor John Curtis Bradford based on debtor's guarantee.

2) Said judgment is nondischargeable.

3) Said judgment is to be calculated for that amount not collected from co-guarantor John Luhrs.