In re Kevin Patrick JACOBE, Debtor.

SOUTHEAST ASSOCIATES OF DURHAM, a North Carolina general partnership, Plaintiff,

v.

Kevin Patrick JACOBE, Defendant.

DELTA SQUARE LIMITED PARTNERSHIP, a North Carolina Limited Partnership, Plaintiff,

v.

Kevin Patrick JACOBE, Defendant.

Bankruptcy No. 88–02650–RT.

Adv. Nos. 89–0156–RT, 89–0157–RT.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Sept. 10, 1990.

---

Robert D. Perrow, James J. Burns, John H. Trevey, Williams, Mullen, Christian & Dobbins, Richmond, Va., for plaintiffs.

Kathryn L. Pryor, John G. Douglass, Wright, Robinson, McCammon, Osthimer & Tatum, Richmond, Va., for debtor/defendant.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

These two adversary proceedings arise from dischargeability complaints under 11 U.S.C. § 523(a)(2)(B) and were consolidated

for trial held on June 18 and 19, 1990. The plaintiffs, who are related business entities and represented by the same counsel, base their cases upon a single financial statement of the debtor.

At the conclusion of the plaintiffs' evidence the court granted defendant's motion pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and Rule 7041 of the Rules of Bankruptcy Procedure for an involuntary dismissal of the Southeast Associates of Durham complaint in Adversary Proceeding No. 89–0156–RT.

At the conclusion of the trial, the court ruled in defendant's favor against Delta Square Limited Partnership in Adversary Proceeding No. 89–0157–RT.

This opinion supplements the court's oral findings and rulings at trial.

### Findings Of Fact

Defendant, Kevin Patrick Jacobe, filed his chapter 7 bankruptcy petition on December 1, 1988. At the time of filing his petition Jacobe was president, director, and a shareholder of Southeast Stores, Inc., which was also then a debtor in possession in a chapter 11 bankruptcy case filed on September 16, 1988 (Case No. 88–02202–RT). Southeast's chapter 11 case was converted to a case under chapter 7 on February 23, 1989.

Southeast Stores was formed in 1988 through the merger of Atlantis International N.A., Inc. (Atlantis), and other corporations that operated specialty retail apparel stores in the southeastern United States with headquarters located in Richmond, Virginia.

Atlantis had been organized in early 1987 with Jacobe as president. By August 30, 1987, an important date in this case, Atlantis had opened approximately 15 stores in various shopping centers. A unique feature of the Atlantis operation was that in the negotiation of its store leases, the landlords were requested and agreed to pay substantial "upfitting costs" to Atlantis. These revenues were used by Atlantis as capital in the opening and operation of its new chain of stores. As a condition for advancing upfitting costs, most, if not all, of Atlantis' landlords required Jacobe personally to guarantee the corporation's rent obligations under the leases.

Plaza Associates, Inc. (Plaza), is a shopping center developer with headquarters in Raleigh, North Carolina. Samuel M. Longiotti is its sole stockholder and president. The plaintiffs in the instant adversary proceedings are limited partnerships and owners of shopping centers developed by Plaza. Longiotti is a general partner of both plaintiff partnerships, and Plaza acted as agent for the plaintiffs in negotiating shopping center leases. Delta Square Limited Partnership is the owner of Delta Square Shopping Center in Memphis, Tennessee. Southeast Associates of Durham owns Parkway Plaza I Shopping Center located in Durham, North Carolina.

On behalf of Atlantis or its successor Southeast Stores, Jacobe negotiated store leases in the shopping centers of each of these plaintiffs. Jacobe's indebtedness, the subject of these adversary proceedings, resulted from his personal guaranties of rents owed plaintiffs by Southeast Stores, which defaulted its lease obligations and closed all stores after filing bankruptcy. In their § 523(a)(2)(B) dischargeability complaints, each plaintiff relies upon Jacobe's personal financial statement dated August 30, 1987.

#### Delta Square Lease

Jacobe first met with representatives of Plaza in Raleigh, North Carolina, during June or July of 1987. The meeting was arranged through the firm of Poag & Thomason Development Company (Poag), a shopping center developer located in Memphis, Tennessee, with whom Jacobe had previously dealt and with whom Atlantis had entered into shopping center leases in the Memphis area.

Present at this first meeting were Jacobe, Dominic Ranelli, then a general partner of Delta Square and director of shopping center development for Plaza, along with a representative of Poag. The purpose of the meeting was to consider the possibility of Atlantis leasing store space in Delta Square's new Memphis shopping cen-

**302**

ter. During the negotiations which took place during this meeting, Jacobe advised Ranelli that in entering into a lease with Plaza or its affiliate, Atlantis would require at the outset a substantial payment from the lessor for Atlantis' costs in upfitting its new stores. Ranelli agreed that this type of payment could be provided, but that in return Plaza would require Jacobe to give a personal guaranty of all or a portion of Atlantis' obligation to pay rent. Jacobe agreed to this condition.

Negotiations and discussions continued in subsequent meetings during July and August for Atlantis to lease several store spaces in Delta Square. When negotiations were completed, a lease document was prepared by Plaza personnel, who on July 6, 1987, mailed four copies of the lease to Jacobe at Atlantis headquarters in Richmond. Plaza's transmittal letter requested Jacobe to have all four copies executed on behalf of Atlantis and returned to Plaza for full execution. Jacobe complied with this request, and the four executed lease originals were returned.

Some days later Jacobe received a telephone call from a Plaza paralegal advising him that the Delta Square lease had been fully executed by all necessary parties but that an additional document was needed—Jacobe's personal guaranty. On August 20, 1987, Jacobe went to Plaza's office where he signed the required personal guaranty and at the same time received back a fully executed original lease with his guaranty attached.

The Delta Square—Atlantis lease delivered to Jacobe on August 20 had been dated August 14, 1987. Longiotti was away on vacation during approximately the last three weeks of August, and his signature on the lease as general partner of Delta Square was affixed by Plaza's counsel under a power of attorney from Longiotti.

Paragraph 42 of the lease provided as follows:

42. *LEASE EFFECTIVE.* The submission of this Lease for examination does not constitute an agreement to enter into a lease, a contract for a lease, or a reser-

vation of or option for the Demised Premises described herein and *this Lease becomes effective as a lease only upon execution and delivery thereof by Landlord and Tenant, whereupon the same shall be binding on the parties hereto.* (emphasis supplied)

Neither the lease nor any other document submitted to the court provided that the lease was conditioned upon Plaza's or Delta Square's receipt of or approval of Jacobe's personal financial statement.

On or shortly after August 30, 1987, Jacobe prepared a personal financial statement. The statement, dated August 30, 1987, was based upon and similar to one he had previously furnished to other financial institutions. For reasons which do not appear in the trial record, Jacobe's August 30 financial statement had been requested by Poag and was furnished by Jacobe to Poag. Subsequently, Jacobe learned that a copy of the statement had been received by Plaza or Longiotti. Jacobe did not send a copy of his financial statement to Plaza or its representatives, and he believed that Poag had furnished a copy to Plaza. Longiotti reviewed the financial statement after he returned from vacation in September 1987.

By Plaza's letter dated September 9, 1987, Jacobe and Atlantis were notified that pursuant to the Delta Square lease agreement of August 14, 1987, the demised store premises would be ready for Atlantis' occupancy by September 18, 1987. On or shortly prior to this date Atlantis took possession and subsequently opened several retail stores in Delta Square shopping center.

Prior to the delivery of the Delta Square lease to Jacobe on August 20, 1987, no condition had been imposed by Plaza or Delta Square that the lease was to be effective only upon the landlord's receipt and approval of Jacobe's personal financial statement.

Neither Jacobe nor Atlantis obtained money, property, services, or credit from Delta Square or its agent based upon Jacobe's furnishing a personal financial statement to Delta Square or its agent, Plaza.

*Southeast Associates of Durham Lease*

After Atlantis opened its stores at Delta Square shopping center in Memphis, Jacobe continued to negotiate with Plaza for additional stores leases. These negotiations resulted in a lease dated March 8, 1988, between plaintiff Southeast Associates of Durham and Southeast Stores, Inc., successor to Atlantis. The lease was for store space in Parkway Plaza I shopping center in Durham, North Carolina.

Jacobe's personal obligation to Plaza and Southeast Associates of Durham arising from this lease was stated in the following letter to Jacobe from Dominic Ranelli dated March 8, 1988:

This Letter will serve as our agreement concerning the Lease Agreement by and between Southeast Associates of Durham (hereinafter "Landlord") and Southeast Stores, Inc., (hereinafter "Tenant") dated March 8, 1988.

You hereby agree to personally guaranty the repayment of the $75,000.00 upfit allowance payment to Tenant from Landlord should Tenant default in the Lease and vacate the Demised Premises, such guaranty to be provided in the following manner:

a. For the first full lease year of the term of the Lease, you will guaranty the repayment of the full $75,000 to Landlord should Tenant default and vacate the Demised Premises;

b. For the second full lease year of the term of the Lease, you will guaranty the repayment of $50,000 to Landlord should Tenant default and vacate the Demised Premises;

c. For the third full lease year of the term of the Lease, you will guaranty the repayment of $25,000 to Landlord should Tenant default and vacate the Demised Premises.

If this is your understanding of the guaranty that you are providing for the above referenced Lease Agreement please indicate so by executing the signature line provided below and returning the original of this Letter to me.

If you should have any further questions or problems please do not hesitate to call me.

(Defendant's Exhibit D)

Although Jacobe accepted the conditions stated in this letter, he was not advised that a personal financial statement was a requirement imposed by Plaza in connection with this lease. In March 1988, Longiotti or Plaza still retained Jacobe's August 30, 1987, financial statement. However, the statement was not reviewed or relied upon by Longiotti at the time the new lease was entered into by the parties. Neither Jacobe nor Southeast Stores obtained money, property, services, or credit from Southeast Associates of Durham or its agent based upon Jacobe's personal financial statement.

*Discussion And Conclusion*

The plaintiffs in these two adversary proceedings brought under 11 U.S.C. § 523(a)(2)(B) ask the court to except from Jacobe's chapter 7 discharge his liability for rents owed by Southeast Stores, Inc., as former tenant of plaintiffs' shopping centers. Each plaintiff claims that Jacobe gave a false financial statement that was instrumental in inducing them to lease store space to Jacobe's company. The plaintiffs' damages include not only rents lost by the closing of the stores but also claims for the return of substantial advance ("fit up") payments made to the tenant.

Jacobe does not dispute his personal liability to the plaintiffs under lease guaranties. While he denies giving a false financial statement, his main defense is that his personal financial statement was not a condition of the lease transactions and that it was not relied upon by plaintiffs.

The elements to prove a debt excepted from discharge under § 523(a)(2)(B) are:

(1) the debt was obtained by the use of a writing,

(2) that was materially false,

(3) respecting the debtor's or an insider's financial condition,

(4) on which the creditor to whom the debtor is liable for money, property, services, or credit reasonably relied, and (5) that the debtor caused to be published with the intent to deceive.

11 U.S.C. § 523(a)(2)(B). 3 L. King *Collier on Bankruptcy* ¶ 523.09 (15th ed. 1988); *see also, United Leasing Corp. v. Roop,* 48 B.R. 310 (E.D.Va.1985).

The burden of proof is on the creditor to establish each of the five elements.

It is apparent that this is not the typical § 523(a)(2)(B) case. I have been able to find no other reported decision under this section in which a primary issue was whether the debtor's personal financial statement was required by the creditor as a condition of a financial transaction.

This court has made crucial findings of fact in these proceedings which mandate judgment for the debtor without the necessity for the court to consider the typically most common issue under § 523(a)(2)(B)—whether the debtor's financial statement was materially false. *See Nationwide Financial Corp. v. Smith (In re Smith),* 2 B.R. 276 (Bankr.E.D.Va.1980).

*Delta Square*

Delta Square's case must fail because at least three essential elements of § 523(a)(2)(B) have not been established. It has not been shown (1) that the debt was obtained by the plaintiff creditor's use of Jacobe's financial statement, (2) that the plaintiff reasonably relied upon Jacobe's financial statement in entering into the lease, or (3) that Jacobe caused his statement to be published with the intent to deceive the plaintiff.

### DEBT OBTAINED BY PLAINTIFF'S USE OF JACOBE'S FINANCIAL STATEMENT.

■ A cursory reading of § 523(a)(2)(B) makes it obvious that as a fundamental requirement the creditor must prove the debtor was under a duty to furnish a financial statement as part of the credit transaction. *See Martin v. Bank of Germantown (In re Martin),* 761 F.2d 1163, 1167 (6th Cir.1985). The financial statement must have been "asked for and furnished as a basis for credit". *Wickman Machine Tools v. Bradford (In re Bradford),* 22 B.R. 899, 902 (Bankr.W.D.Okla.1982).

■ No writing presented at trial suggests that Atlantis' Delta Square lease was conditioned upon Plaza's approval of Jacobe's financial statement. Jacobe testified he was never told his statement was required or would be used, and his testimony is supported in general by letters Atlantis received from Plaza during August 1987, indicating without reservation that Plaza then considered Atlantis as a new tenant of Delta Square.

Ranelli, Plaza's former director of shopping center development who negotiated the lease with Jacobe, testified he told Jacobe on several occasions a personal financial statement would be required. However, neither Plaza's other key witness, its president Longiotti, nor any other witness could substantiate that Jacobe was so advised.[1]

The court accepts Longiotti's testimony that he considered Jacobe's financial statement a requirement and that following his return from vacation in September he received a copy of the statement which he reviewed and approved.[2] Significantly, however, Longiotti had no knowledge of just when the financial statement was received or from where it came. Mr. Longiotti's belief that the statement was a condition is not sufficient to prove it was in fact a condition of the contract. Moreover, the weight of the evidence refutes Longiotti's understanding that the lease was approved and delivered only after he reviewed and approved Jacobe's financial statement.

---

1. For example, Ranelli testified that in one exchange with Jacobe, he stated in effect that the executed lease was not leaving Plaza's offices until Jacobe submitted his financial statement. Longiotti testified that he was unaware of any such conversation or understanding.

2. Longiotti's testimony suggests that he relied primarily upon information he received during a telephone conversation with an official of Atlantis' or Jacobe's bank.

The lease was executed for Longiotti with unchallenged authority under a power of attorney by his corporate counsel, and no evidence controverts Jacobe's testimony that the fully executed lease was unconditionally delivered to him on August 20, 1987. Plaza's witnesses were unable to produce a transmittal letter or other evidence of any kind suggesting a different time of delivery of the lease to Atlantis. By the plain terms of paragraph 42 of the lease, it became effective upon execution and delivery.

## RELIANCE ON JACOBE'S STATEMENT.

■ It is obvious that if the plaintiff effectively concluded a lease agreement on August 20, 1987, it could not have relied upon a financial statement prepared by Jacobe on or after August 30, 1987. *See Anderson, Clayton & Co. v. Wingfield (In re Wingfield)*, 15 B.R. 647 (W.D.Okla. 1981).

■ Moreover, the question of plaintiff's reliance also goes back to the matter of whether the financial statement was a condition of the transaction. The plaintiff must prove, as it has not, that the debtor's statement was a "substantial consideration" or that it was a "contributory cause" for the creditor's approving the transaction. *See In re Coughlin*, 27 B.R. 632 (1st Cir. BAP 1983); *Household Finance Corp. v. Howard (In re Howard)*, 73 B.R. 694, 708 (Bankr.N.D.Ind.1987); *Pacific International Developers Corp. Ltd. v. Sullivan (In re Sullivan)*, 58 B.R. 692, 697 (Bankr. D.Mass.1986); *Sparkman v. Janes (In re*

*Janes)*, 51 B.R. 932, 935 (Bankr.D.Kans. 1985); *In re Bradford*, 22 B.R. at 902.

## PUBLICATION WITH INTENT TO DECEIVE.

■ The plaintiff's evidence does not establish how Plaza or Longiotti came into possession of Jacobe's financial statement. Again, however, Jacobe's testimony is uncontroverted that he never furnished his statement to Plaza but, rather, that he sent the statement to Poag, another shopping center developer who Jacobe believed sent a copy to Plaza. We do not know why the statement was sent to Poag or why Poag may have sent it to Plaza. The plaintiff's evidence thus utterly fails to establish that Jacobe published the financial statement with intent to deceive Plaza or its agent Delta Square.[3]

*Southeast Associates of Durham*

■ After the Delta Square lease, a second lease dated March 8, 1988, was negotiated by Jacobe with Plaza for stores in Parkway Plaza I shopping center in Durham, North Carolina. The lessor was plaintiff Southeast Associates of Durham, and the lessee was Southeast Stores, Inc. (successor to Atlantis).

Jacobe was required to give a partial personal guaranty for the lessee's rent obligations. However, again there is no written evidence suggesting the lessor required Jacobe to furnish a financial statement. Mr. Longiotti acknowledged at trial that after reviewing Jacobe's statement in September he did not look at the statement again, nor did he request a new statement

---

**3.** Several case decisions contain dicta that, taken out of context, might suggest that the publication element was met where the creditor indirectly received the debtor's financial statement. *See Syracuse Savings Bank v. Weiner (In re Weiner)*, 86 B.R. 912, 915 (Bankr.N.D.Ohio 1988); *Century First Nat'l Bank of Pinellas County v. Holwerda (In re Holwerda)*, 29 B.R. 486, 488 (Bankr.M.D.Fla.1983); *Modern Distributors Inc. v. Gray (In re Gray)*, 22 B.R. 676 (Bankr.W.D.Wisc.1982); 3 L. King *Collier on Bankruptcy*, ¶ 523.09[5][a] (15th ed. 1988).

However, the cited bankruptcy decisions are plainly distinguishable from Jacobe's situation.

For example, in *Gray*, the debtor knew that the creditor had received the financial statement from the debtor's partner; the debtor had seen the statement and knew or should have known it was false and that the creditor would rely upon it.

The decisions cited in *Collier* (note 20) are all cases where debtors submitted false statements to credit reporting agencies; it was thus obvious to the debtors that credit might be extended on the basis of such statements. See, for example, *In re Muscara*, 18 F.2d 606, 607 (W.D.Pa.1927).

in connection with the lease of March 8, 1988.

At trial the court granted debtor's motion, made upon the completion of plaintiff's evidence, for an involuntary dismissal of Southeast Associates of Durham's complaint. The court's ruling followed from its conclusion that plaintiff's evidence failed to establish any reliance upon Jacobe's financial statement in connection with the lease of March 8, 1988. Considered in light of all the evidence, this plaintiff's case suffers from the same deficiencies as that of Delta Square. There is no written evidence suggesting the lease was conditioned upon Jacobe's financial statement. One exhibit in particular supports Jacobe's testimony that a statement had not been required. Ranelli's letter to Jacobe of March 8, 1988, (set out above) states in great detail Jacobe's obligation of personal guaranty but makes no reference to a financial statement.

Separate orders will be entered reflecting the court's rulings in these adversary proceedings.