In re M. Charles McBEE, Debtor.

PATERNO IMPORTS, LTD., Plaintiff,

v.

M. Charles McBEE, Defendant.

Bankruptcy No. 91–34241–T.
Adv. No. 92–3011.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

May 10, 1994.

Philip C. Baxa, Mays & Valentine, Richmond, VA, for debtor/defendant.

Archie C. Berkeley, Jr., Berkeley, DeGaetani & Frye, Richmond, VA, for plaintiff.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Trial was held on February 14, 15, 18, and March 4, 1994, on plaintiff's complaint to determine dischargeability of debt pursuant to 11 U.S.C. § 523(a)(2)(B). At the conclusion of the trial the court made findings of fact and conclusions of law from the bench and ruled for debtor defendant. This memorandum opinion supplements the court's bench ruling.

#### Findings of Fact

On October 10, 1991, debtor filed a voluntary chapter 7 petition. On January 13, 1992, plaintiff filed this adversary proceeding seeking to determine the dischargeability of debt pursuant to 11 U.S.C. § 523(a)(2)(A) and (B). By order entered July 20, 1993, the court granted debtor's motion for summary judgment as to the § 523(a)(2)(A) count, and this count was dismissed. *See Paterno Imports, Ltd. v. McBee (In re McBee),* 159 B.R. 461 (Bankr.E.D.Va.1993).

Debtor was an officer and shareholder of International Wine Company, Inc. (IWC), a New York corporation. In the fall of 1987, IWC began purchasing wine from plaintiff on an open account, unsecured basis. By the summer of 1988, IWC had overdue balances for wine purchased from plaintiff approximating $200,000.00.

As a result, plaintiff placed IWC on a "nonshipment" status in August 1988 and

refused to release additional products that IWC had ordered. The products withheld included wine IWC had ordered for the Thanksgiving and Christmas holiday season of 1988. IWC and plaintiff both recognized the importance of having these products distributed in sufficient time to be sold during the holiday seasons.

In early November 1988 plaintiff threatened legal action against IWC to collect the outstanding balances. On November 10, 1988, a representative of plaintiff met with debtor and debtor's counsel to discuss matters related to the IWC account. The meeting took place at IWC's offices in Long Island, New York. An official of Connecticut National Bank, the principal secured creditor of IWC, was also present during a portion of that meeting.

During the period in which the bank official was present at the meeting, the parties discussed a proposal by plaintiff under which plaintiff would provide IWC with wine products for the 1988 holiday season with the understanding that plaintiff (1) would receive a purchase money security interest in the products and (2) would be paid its costs out of the proceeds of the sale. This proposal required the approval of the bank; when he left the meeting the bank officer indicated that he felt the proposal might be accepted and that he would let debtor know of the bank's decision. Ultimately, this arrangement was not implemented.

After the bank official left the meeting, plaintiff's representative advised debtor that plaintiff would require debtor to sign on behalf of IWC a demand promissory note in the amount of $199,793.75 payable to plaintiff, along with debtor's personal guaranty of IWC's debt to plaintiff. Both documents, dated November 10, 1988, had been prepared by plaintiff's counsel before the meeting and were presented to debtor and signed by him at the meeting. At the time he signed the personal guaranty, debtor was not advised by plaintiff that a personal financial statement was required or that any transaction with plaintiff was conditioned upon plaintiff's approval of his personal financial statement. Nothing in the guaranty or any other documentation mentioned any requirement that debtor produce a financial statement to support his guaranty. Debtor did not produce a financial statement at the meeting.

On November 11, 1988, debtor sent by telecopier to plaintiff an individual personal financial statement dated October 31, 1988. Debtor's net worth stated on the financial statement was approximately $1,900,000.00. However, plaintiff did not require nor did it rely upon any financial statement of debtor in accepting debtor's personal guaranty.

Although plaintiff's proposal at the meeting of November 10, 1988, was approved by the bank soon after the meeting, plaintiff refused to enter into that transaction. Instead, by letters dated December 2, 1988, plaintiff made demand upon IWC for payment of all amounts reflected in the note dated November 10, 1988, and for all amounts allegedly owed pursuant to debtor's personal guaranty. Plaintiff filed suit on or about January 30, 1989, against IWC and debtor in the United States District Court for the Southern District of New York to recover the amounts owed pursuant to the note and the guaranty. That court entered judgment in the amount of $303,931.42 in favor of plaintiff against IWC and debtor in July 1991.

*Discussion and Conclusions of Law*

■ Plaintiff seeks to except its debt from discharge on the basis of reliance on debtor's alleged false financial statement pursuant to 11 U.S.C. § 523(a)(2)(B).

■ To establish an exception of a debt from discharge under 11 U.S.C. § 523(a)(2)(B), the plaintiff must prove the following:

(a) the debt was obtained by the use of a writing,

(b) the writing was materially false,

(c) the writing respected the debtor's or an insider's financial condition,

(d) the creditor to whom the debtor is liable for money, property, services or credit reasonably relied upon such writing,

(e) the debtor caused the writing to be published with the intent to deceive; and

(f) the creditor sustained losses and/or damages as a result of such debtor's actions.

*Havenstein v. Freeman (In re Freeman)*, 142 B.R. 758, 760 (Bankr.E.D.Va.1991); *Southeast Assocs. of Durham v. Jacobe (In re Jacobe)*, 121 B.R. 299, 303–04 (Bankr. E.D.Va.1990).

█ The creditor seeking exception from discharge carries the burden of proof to establish each element under Section 523(a) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

█ The court ruled from the bench that the essential element missing from plaintiff's case was reasonable reliance on the alleged false financial statement. Because the court can rule on the complaint solely on the basis of reliance, it is unnecessary to make findings and conclusions concerning the other elements of § 523(a)(2)(B).[1] *See Nationwide Fin. Corp. v. Smith (In re Smith)*, 2 B.R. 276, 279–80 (Bankr.E.D.Va.1980).

█ A fundamental requirement of reliance under § 523(a)(2)(B) is that the creditor prove the debtor was under a duty to furnish a financial statement as part of the credit transaction. *In re Jacobe*, 121 B.R. at 304. Moreover, the financial statement must have been asked for and furnished as a basis for credit, and the statement must have been a substantial consideration or a contributory cause for the creditor's accepting the transaction. *In re Jacobe*, 121 B.R. at 304–05 (citations omitted).

The instant case hinges on the events surrounding the November 10, 1988, meeting between debtor, debtor's counsel, plaintiff and the Connecticut National Bank official. Each party presented evidence in diametric opposition to the other party's claims. It will be helpful to summarize each party's version of the meeting.

PLAINTIFF'S VERSION OF THE NOVEMBER 10, 1988, MEETING.

Plaintiff maintains that its representative threatened legal action to collect IWC's overdue balances. In response to those threats, debtor offered to personally guarantee the obligations of IWC in exchange for plaintiff's agreement not to pursue immediate collection efforts against IWC, thus affording IWC additional time to resolve its financial difficulties.

Plaintiff claims that it agreed to withhold efforts to collect the debt in exchange for debtor's unconditional personal guarantee of IWC's debt, provided that debtor would furnish a financial statement showing personal wealth to support his guaranty. Plaintiff's representative testified that plaintiff in fact relied upon debtor's guaranty and financial statement in forbearing[2] from further collection efforts against IWC.

Plaintiff's representative further testified that at the meeting in connection with the alleged forbearance agreement, debtor produced a "stale" financial statement dated May 2, 1987, representing debtor's personal assets that would support the guaranty. He further testified that the net worth reflected on the statement was approximately $1,640,000.00, and the debtor claimed sole ownership of all assets on the statement. He further testified that debtor agreed to provide a current financial statement to support the guaranty the following day.

Plaintiff asserts that, in reliance upon debtor's guaranty signed November 10, 1988, and the financial statement provided November 11, 1988, plaintiff withheld legal action against IWC. Its representative further testified that plaintiff would not have accepted

---

**1.** The court has made crucial findings of fact in this proceeding which require judgment for the debtor based on nonreliance by the plaintiff on the financial statement. The court therefore does not resolve conflicts in the evidence concerning other issues raised at trial, such as (a) whether the financial statement in question was materially false; (b) whether the financial statement in question was published with intent to deceive; (c) whether any purported reliance of plaintiff on the financial statement in question would have been reasonable under the circumstances; and (d) whether plaintiff sustained any actual losses as a result of any reliance on the financial statement.

**2.** Forebear is hardly descriptive of plaintiff's actions. It instituted legal proceedings against IWC and debtor a mere three weeks after the November 10, 1988, meeting. If the forbearance agreement did exist, it was of an extremely short duration.

debtor's guaranty without an adequate financial statement.

## DEBTOR'S VERSION OF THE NOVEMBER 10, 1988, MEETING.

In his pleadings and at the trial debtor (1) denied that plaintiff made any threat of litigation against IWC in early November 1988; (2) denied that he agreed to guarantee the obligations of IWC in exchange for plaintiff's agreement not to pursue immediate collection efforts against IWC; and (3) denied that he agreed to provide a financial statement to plaintiff to support his guaranty.

Debtor also denied that he produced any financial statements during the meeting; in fact, he testified that there were no discussions of any financial statement prior to or during the meeting.

Debtor testified that he signed the guaranty only as a part of the purchase money security interest arrangement discussed with the bank at the meeting and that he did not believe the guaranty would be effective if the arrangement was not consummated.

Debtor testified that he provided a financial statement to plaintiff on November 11, 1988, only in connection with a request by plaintiff for information related to the proposed sale or restructure of IWC.

## THE COURT'S RECONCILIATION OF THE EVIDENCE.

The essential transaction at issue here is whether plaintiff required and relied upon debtor's financial statement; this must be determined from what took place at the meeting of November 10, 1988. Unfortunately, the oral testimony presented by the parties at trial was, in its most important aspect, conflicting and irreconcilable.

Although there are improbable aspects in the testimony from both camps, the burden of proof is on the plaintiff. The court finds that plaintiff has failed in its burden, and I am unable to accept plaintiff's version as fact. Consequently, the court must enter judgment in favor of debtor.

I base my conclusion on the slightly more plausible testimony of debtor and his former counsel who was present at the meeting of November 10, 1988, and the lack of documentation. Despite the fact that plaintiff's counsel prepared extensive documentation which debtor was required to sign both personally and for IWC, debtor's guaranty does not mention a financial statement. And no other writing presented at trial suggests that the guaranty was conditioned upon plaintiff's approval or acceptance of debtor's financial statement.

In summary, the court finds that plaintiff has failed to establish (1) that plaintiff and debtor entered into an agreement under which plaintiff would forbear from pursuing further collection efforts against IWC and give IWC time to resolve its financial difficulties, in exchange for debtor's personal guaranty of IWC's debt to plaintiff; (2) that any transaction between plaintiff and debtor was conditioned upon plaintiff's acceptance or approval of debtor's personal financial statement;[3] or (3) that at the meeting of November 10, 1988, debtor produced a personal financial statement or that there was any discussion of such a statement.

These findings require the court to conclude that plaintiff did not rely upon debtor's personal financial statement of November 11, 1988, or any other statement.

The instant case is substantially similar to this court's decision in *In re Jacobe* and provides a secondary rationale for finding that plaintiff did not rely on debtor's financial statement in securing the personal guaranty. In *Jacobe*, I concluded that if the plaintiff effectively concluded a lease agreement on August 20, 1987, it could not have relied upon a financial statement prepared on or after August 30, 1987. *In re Jacobe*, 121 B.R. at 305.

Similarly in the instant case, I find that plaintiff effectively accepted the personal guaranty without reservation on November 10, 1988. Therefore, the plaintiff could not have relied on the financial statement produced on November 11, 1988.

---

3. In my view, regardless of any personal financial statement, plaintiff would have accepted debtor's guaranty. In fact, with debtor's personal guaranty plaintiff's credit position improved (albeit incrementally) with respect to the IWC debt regardless of debtor's financial condition. Plaintiff had everything to gain and nothing to lose by securing debtor's personal guaranty.

A separate order will be entered granting judgment to the debtor.